1391

Alden CHAVOUS, Jr., Individually and as Guardian Ad Litem for Alden Chavous, III, a minor, Appellants v. Herman Wayne BROWN and Joanna Brown, Respondents.

(385 S. E. (2d) 206)

Court of Appeals

*D. Lester Diggs,* Aiken, *for appellants.*

*Robert C. Brown, Jr.,* Columbia, *for respondents.*

Heard Feb. 16, 1989.

Decided Sept. 5, 1989.

CURETON, Judge:

The issue in this case is whether the constitutional guarantee of equal protection of the laws prohibits the exercise of peremptory challenges on racial grounds by private litigants in the trial of a civil case; if it does, did the respondents present non-racial based reasons for their peremptory jury challenges.[1] We reverse and remand for a new trial.

The case arises from an automobile accident. The appellants are black and the respondents are white. Both are represented by private counsel. The petit jury list for the common pleas term consisted of seventy-five potential jurors. Sixty were white and fifteen were black. The panel drawn for the case contained twenty potential jurors. Four were black. The respondents utilized their four peremptory challenges to remove the four prospective black jurors from the panel. The appellants objected to the respondents' peremptory challenges asserting they were exercised solely on race. The court, after conducting a *Batson* hearing, overruled their objection. The jury returned a verdict for the respondents.

This is a novel issue in South Carolina and in most of the states in the Union. The disposition of this provocative issue requires a two-step analysis. First, we must determine if *Batson v. Kentucky* applies to a civil action. If it does, we must review the record to determine if a *prima facie* showing of purposeful racial discrimination was established and then consider if racially neutral explanations for the exercise of the peremptory challenges were given.

---

[1] The record indicates the appellants' objection was based solely upon *Batson v. Kentucky,* 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) (1986). They did not raise an issue under the South Carolina Constitution.

## I.

The Fourteenth Amendment to the United States Constitution prohibits any state from depriving the equal protection of the laws to any person within its jurisdiction. It does not, however, prohibit private discriminatory conduct. In *Batson v. Kentucky* the United States Supreme Court held the Equal Protection Clause of the Fourteenth Amendment prohibited a state prosecutor from exercising peremptory challenges to strike potential jurors solely due to race or based upon an assumption black jurors as a group could not impartially consider the state's case against a black defendant. *Batson,* 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69.

The South Carolina Supreme Court subsequently set forth a "bright line test" for a *Batson* hearing in a criminal case. *State v. Jones,* 293 S. C. 54, 358 S. E. (2d) 701 (1987). The court held the better course to follow would be to hold a *Batson* hearing whenever (1) the defendant requests a hearing; (2) he is a member of a cognizable racial group; and (3) the prosecutor exercises peremptory challenges to remove members of the defendant's race from the venire. *Id.* at 58, 358 S. E. (2d) at 703. If a defendant makes the necessary showing, the prosecutor has the burden of providing a racially neutral explanation for the use of his peremptory strikes. *Id.* This explanation must be related to the particular case being tried but it need not rise to the level of a challenge for cause. *State v. Lewis,* 293 S. C. 107, 359 S. E. (2d) 66 (1987) (juror knew defense attorney). The court has affirmed findings of racially neutral reasons in *State v. Martinez,* 295 S. C. 72, 362 S. E. (2d) 641 (1987), and *State v. Howard,* 295 S. C. 462, 369 S. E. (2d) 132 (1988). In *Martinez* the court found racially neutral reasons stated for strikes against black jurors of the same age and sex as the defendant who had possible criminal records and against a black juror who was unemployed. *Martinez,* 294 S. C. at 73, 362 S. E. (2d) at 642. In *Howard* the court found a neutral explanation for strikes against black jurors based upon their perceived attitudes toward the death penalty. *Howard,* 295 S. C. at 466, 369 S. E. (2d) at 134.

*Batson* and the cases decided by our Supreme Court all dealt with criminal prosecutions where state action is

clearly present because the prosecutor, an agent of the state, exercised the peremptory strikes. In civil cases neither the parties nor private counsel is ordinarily identified with the state. The United States Supreme Court has long held that private conduct "however discriminatory" does not raise a constitutional violation under the Fourteenth Amendment to the United States Constitution. *Shelley v. Kraemer*, 334 U. S. 1, 68 S. Ct. 836, 92 L. Ed. 1161 (1948); *see Peterson v. City of Greenville*, 373 U. S. 244, 83 S. Ct. 1119, 10 L. Ed. 323 (1963). Thus, to establish a violation of their equal protection rights the appellants must convince us that the state, and not private individuals, was the source of the purposeful discrimination.

In analyzing this equal protection issue under the due process clause of the Fifth Amendment, the Eleventh Circuit Court of Appeals held that the trial judge, in overruling objections to peremptory challenges, became guilty of the sort of discriminatory conduct that the equal protection clause prohibits. *Fludd v. Dykes*, 863 F. (2d) 822 (11th Cir. 1989), *rehearing denied*, 873 F. (2d) 300 (1989).[2] The Fifth Circuit Court of Appeals also applied *Batson* to a civil case finding the requisite governmental action in the tacit approval by the trial judge of the exercise of peremptory challenges. "The government is inevitably and inextricably involved as an actor in the process by which a federal judge, robed in black, seated in a paneled courtroom, in front of an American flag, says to a juror, 'Ms. X, you are excused.'" *Edmonson v. Leesville Concrete Co., Inc.*, 860 F. (2d) 1308, 1313 (5th Cir. 1988), *rehearing en banc granted*, 860 F. (2d) 1317 (1989). On the other hand, the Eighth Circuit Court of Appeals has expressed "strong doubts" about the application of *Batson* to a civil case without directly deciding the issue. *Wilson v. Cross*, 845 F. (2d) 163 (8th Cir. 1988); *Swapshire v. Baer*, 865 F. (2d) 948 (8th Cir. 1989) (articu-

---

[2] "The trial judge's decision—to proceed to trial, over the party's objection, with a jury selected from the venire on the basis of race—is the one that harms the objecting party. In overruling the objection, which informed the court that the peremptory challenger may be excluding blacks from the venire on account of their race, the judge becomes guilty of the sort of discriminatory conduct that the equal protection clause proscribes." *Fludd*, 863 F. (2d) at 828.

lated reasons for strikes did not violate *Batson* assuming it applied).

The function of a jury in South Carolina is to determine the facts from the evidence and apply those facts to the law as charged by the trial judge. There is no underlying distinction between the function of a criminal jury and a civil jury. One is not more important than the other. Justice under the law for all parties is the goal of any trial. Racial injustice has no more place in the courtroom on the days the court is conducting civil trials than it does on the days it conducts criminal trials.

The United States Supreme Court has stated that the ■■ peremptory challenge has always been considered "a necessary part of trial by jury ... [and] one of the most important rights secured to the accused." *Swain v. Alabama*, 380 U. S. 202, 219, 85 S. Ct. 824, 835, 13 L. Ed. (2d) 759 (1965) (quoting *Pointer v. United States*, 151 U. S. 396, 408, 14 S. Ct. 410, 414, 38 L. Ed. 208 (1894) ), *overruled in part, Batson v. Kentucky*, 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986). Peremptory challenges in civil cases in this state are provided by statute. Section 14-7-1050, Code of Laws of South Carolina, 1976, as amended. The intent of the code section is to give litigants a fair and impartial jury. *Brown v. S.H. Kress & Co.*, 170 S. C. 178, 170 S. E. 142 (1933). The trial judge is inextricably involved in the process of obtaining a fair and impartial jury. The judge conducts *voir dire*. He may excuse jurors from sitting on a particular case. Ultimately, he determines constitutional challenges to the jury.[3] Because the trial judge makes the determination as to the impartiality of a selected jury, we hold his involvement in the selection process is substantial enough to be considered "state action" subject to the mandates of the Fourteenth Amendment. *See Tulsa Professional Collection Services, Inc. v. Pipe*, 485 U. S. 478, 108 S. Ct. 1340, 99 L. Ed. (2d) 565 (1988) (involvement of probate court). Thus, we agree with the basic reasoning of *Fludd* and *Edmonson* that the proscriptions announced in *Batson v. Kentucky* are not

---

[3] The Equal Protection Clause of the Fourteenth Amendment provides in pertinent part that "no state ... shall deny to any person within its jurisdiction equal protection of the laws."

limited to criminal cases and that racially motivated peremptory strikes are prohibited in civil actions also.

## II.

Having determined the principles of *Batson v. Kentucky* apply to a civil case we now address the exercise of the peremptory strikes in this case. The potential jury panel consisted of twenty individuals categorized as follows:

9 white males
7 white females
2 black males
2 black females

The respondents struck the two black males and the two black females. The appellants struck one white male and three white females. The seated jury consisted of eight white males and four white females.

The respondents provided the following explanation for their challenges:

[Two] of the strikes are of the female gender. I am concerned about the young plaintiff's scarring, facial scarring, and it is my belief that females would be more receptive to the damages aspect of that particular part of the case than would males. So [two] of the strikes were females. One of the strikes was unemployed and has never worked. I felt that she would be an unduly liberal juror and would not have a good well rounded background to give my client a fair trial. One girl worked for a Pepperidge Farm bakery and was very young. I was concerned about young jurors who would be more concerned about the scarring on a young fifteen or sixteen year old boy than would older jurors who have experienced more of life's bumps and falls and have seen scars as they developed. One of the jurors name was Bush. She was a black female. I understand Mr. Diggs is married to a Bush, maiden name. I was concerned that she may be distantly or even more closely related to ... excuse me. It was a male juror— Finance Bush. That last name concerned me. He may be related to plaintiff's counsel. ... and the last juror came from the same basic background as Mr. Chavous, Jr. and

therefore, I thought he would identify with Mr. Chavous very closely and had a reason to strike him because he came out of the same basic background, socio-economic background and education and same type of work field. And is roughly the same age as Mr. Chavous, Jr.

From this explanation, the black women were struck because of their gender combined with their unemployment or youth. The two black men were struck because one was thought to have a possible family relationship to the plaintiffs' counsel and the other because he had personal background similarities with the father of the injured minor.

We note initially it was proper for the trial court to hold a *Batson* hearing upon request in this case under the guidelines outlined in *State v. Jones.* The appellants were members of a cognizable racial group and the respondents exercised peremptory challenges to remove members of the appellants' race from the venire. Once this *prima facie* case was established the respondents were required to present a racially neutral explanation for the strikes. *State v. Jones,* 293 S. C. at 58, 358 S. E. (2d) at 703.

The trial judge ruled in this case that if *Batson* applied the respondents gave racially neutral explanations for the strikes. Understandably, the South Carolina Supreme Court has had some difficulty in the review of articulated explanations for peremptory strikes. The court unanimously affirmed a challenge in *State v. Lewis* where the prosecutor's explanation was that the juror knew defense counsel. *State v. Lewis,* 293 S. C. 107, 359 S. E. (2d) 66 (1987). In a 3-2 decision, the court affirmed challenges where the explanations were (1) the juror was of same age as defendant in conjunction with a possible criminal record and (2) the juror was unemployed. *State v. Martinez,* 294 S. C. 72, 362 S. E. (2d) 641 (1987). In a 4-1 decision, the court affirmed strikes based upon the juror's perceived attitude toward the death penalty. *State v. Howard,* 295 S. C. 462, 369 S. E. (2d) 132 (1988). However, the court has recently recognized that an originally neutral reason may be proven to be a pretext because it was not applied in a neutral manner. *State v. Oglesby,* 298 S. C. 279, 379 S. E. (2d) 891 (1989).

A cursory review of the strikes without explanation leads to the conclusion the strikes were racially motivated. Four

black jurors were on the panel; the respondents had four strikes; four blacks were struck. However, the trial court and the appellate courts do not simply look at the result of the strikes. The focus is upon the explanation for the strikes.

■ We find the articulated reasons for the strikes of the two black men to be racially neutral. Respondents' counsel felt one could be related to appellants' counsel. *See State v. Lewis*, 293 S. C. 107, 359 S. E. (2d) 66. The other man had the same basic background (i.e. education, work, socio-economic) as one of the appellants and counsel felt he might closely identify with this appellant.

■ As to the black women, the explanation for striking them because of their possible reactions to facial scarring is not by itself a supportable racially neutral reason. The respondents chose not to exercise strikes against seven white women for the same reason. However, the respondents combined the gender concern with other factors. The factor as to one black woman was unemployment. Unemployment was deemed a racially neutral explanation by the South Carolina Supreme Court in *State v. Martinez. See State v. Martinez*, 294 S. C. 72, 362 S. E. (2d) 641. The announced reason for excluding the other black woman was her youth. The record indicates this woman was thirty years old. Of the seven white females on the jury panel two were younger than this juror and one was thirty-two. Coincidentally, of the nine white males on the jury three were younger than the black female and one was thirty-one. We can only conclude that youth was not a concern of the respondents in the selection of white jurors. Thus, an originally neutral reason has been shown to be a pretext for exclusion based solely on race. *State v. Oglesby*, 379 S. E. (2d) 891.

We recognize that by this decision many will claim we have effectively destroyed the concept of peremptory challenges. Others will complain that we have added additional burdens to the already difficult task of the trial judge. Still others will view the decision as affording black litigants an unfair advantage because it does not expressly prohibit black litigants from striking white jurors based solely on race. These, of course, are legitimate concerns. Our position, like that of the court in *Edmonson,* is that we should not ignore these problems because of the difficulty of resolution. As stated in *Edmonson:*

> If racially-motivated challenges are exercised by both parties, the remedy is not to condone them but to insist, when objection is made, that the guarantee of equal protection against all racial prejudice is enforced.

*Edmonson*, 860 F. (2d) at 1314.

We hold that the principles of *Batson v. Kentucky* apply in a civil case. Because respondents did not satisfactorily show that they excluded blacks from the jury for non-racially motivated reasons, we reverse and remand for a new trial.

Reversed and remanded.

SANDERS, C. J., and GARDNER, J., concur.

