No. 89–5072. WILKERSON v. TEXAS. Ct. Crim. App. Tex.
Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins,
dissenting.

Adhering to my view that the death penalty is in all circum-
stances cruel and unusual punishment prohibited by the Eighth
and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153,
231 (1976) (MARSHALL, J., dissenting), I would grant the petition
for certiorari and vacate the death sentence in this case. Even if
I did not hold this view, I would grant the petition to determine
whether a prosecutor's exercise of peremptory challenges based in
part on racial considerations violates the Equal Protection Clause.

## I

Richard Wilkerson, an Afro-American, was convicted of murder
by an all-white jury and sentenced to death. During *voir dire*,
the prosecution exercised 4 of its 12 peremptory challenges to re-
move all of the potential Afro-American jurors. After trial, while
petitioner's case was pending on direct review, this Court held
that the Equal Protection Clause "forbids the States to strike
black veniremen on the assumption that they will be biased in a
particular case simply because the defendant is black." *Batson* v.
*Kentucky*, 476 U. S. 79, 97 (1986). Petitioner subsequently
raised a *Batson* claim in a petition for habeas corpus filed in state
court.

The trial court concluded that Wilkerson had made a prima facie
showing of purposeful discrimination by the prosecution in the
jury selection process. At the *Batson* hearing, one of the pros-
ecutors who conducted *voir dire* conceded that race was a factor in
his peremptory strike of an Afro-American juror:

"Q. . . . When you say you felt a little uneasy about [the juror] generally, was it your considered opinion that the fact that she was black and that the Defendant was black might have some factor or might be some factor in her decision-making process?

"A. I was not completely satisfied that it would not, but that was my uneasiness." App. to Pet. for Cert. 3.

Responding to questions concerning his peremptory strike of a different juror, the prosecutor indicated that he "thought perhaps [the juror] might make some identification I guess, with the defendant to some extent." *Id.*, at 3–4. The questioning continued:

"Q. Based on [the defendant and the juror] being of the same race?

"A. Yeah, that is just a factor." *Id.*, at 4.

Finally, on redirect examination by the State, the same prosecutor stated that his perception that an Afro-American juror would extend sympathy to an Afro-American defendant was "[o]ne of the many considerations [for striking a particular juror] but nothing major about that." *Id.*, at 76.

The trial court nonetheless concluded that the prosecutors "did not exercise peremptory challenges in a discriminatory manner to exclude venirepersons based upon racial considerations, nor did they, in any way, purposefully or deliberately deny jury participation to black persons because of race." *Id.*, at 10. The court based this legal conclusion on several pages of factual findings that relate in detail the prosecution's race-neutral explanations for its peremptory challenges to the Afro-American venirepersons. Unaccountably, these findings do not mention, much less discuss, the prosecution's open admissions that race played a role in its decision to prevent the Afro-American members of the venire from serving on the petit jury. This omission in the state court's factual findings provides ample justification for this Court to dispense with the traditional deference, now codified by statute, that such findings are accorded on federal review. See 28 U. S. C. § 2254(d) (8) (1982 ed.) (presumption of correctness overcome if a federal court concludes that a state court's "factual determination[s] [are] not fairly supported by the record"). Accordingly, this case is properly characterized as one involving mixed prosecutorial mo-

tives in that the decision to challenge the Afro-American jurors rested on both race-neutral considerations and race-conscious factors.

## II

The state trial court's implicit legal conclusion—that the Constitution does not prohibit a prosecutor from striking a juror even when the decision is based in part on his "intuitive judgment [that the juror] would be partial to the defendant because of their shared race," *Batson* v. *Kentucky,* 476 U. S., at 97—cannot be squared with *Batson's* unqualified requirement that the state offer "a *neutral* explanation" for its peremptory challenge, *id.,* at 98 (emphasis added). To be "neutral," the explanation must be based *wholly* on nonracial criteria.

The trial court seems to have transferred a legal standard formulated in other contexts to the *Batson* inquiry by requiring the defendant to show that the Afro-American venirepersons would not have been challenged "but for" the prosecution's impermissible assumptions about race. In some instances in which a defendant's actions were motivated by a mixture of permissible and impermissible factors, we have recognized as a defense to liability a showing that the challenged actions would have occurred even absent the improper consideration. See, *e. g., Mt. Healthy City Bd. of Ed.* v. *Doyle,* 429 U. S. 274, 285–287 (1977) (decision to terminate employment). A "but for" test is inappropriate in the *Batson* inquiry, however, because of the special difficulties of proof that a court applying that standard to a prosecutor's peremptory-challenge decisions necessarily would encounter.

The "but for" standard requires the factfinder to address a counterfactual: whether a prosecutor would have struck the challenged Afro-American jurors if his decisions had not been clouded by impermissible racial considerations. Put another way, the question is whether the prosecutor would have struck the Afro-American jurors had they been white. To answer this question, the factfinder must decide whether the prosecutor's intuitive, racially neutral reservations about the challenged Afro-American jurors were in each case greater than his intuitive reservations about the white jurors whom he chose not to strike. The court must determine not only whether a prosecutor's denial of racial motivation is credible—the current *Batson* question—but also whether a prosecutor's explanation for his *lack* of objection to white jurors is credible so that it can undertake the difficult task

of comparing prosecutorial judgments of challenged and unchallenged jurors.

But how is the factfinder to uncover the prosecutor's intuitive reservations regarding the unchallenged white jurors? The only avenue of inquiry is to ask the prosecutor himself. If he claims not to have entertained such reservations, the questioning must end, because external corroboration of the prosecutor's explanation of his inaction is necessarily unavailable. No record memorializes the prosecutor's contemporaneous justifications for failing to challenge a juror. Moreover, given the purely subjective nature of peremptory challenges, such a record could not be made. Thus, the prosecutor's claim that he harbored no reservations regarding a particular juror is insulated from meaningful review. In contrast, some external corroboration *is* available regarding the prosecutor's affirmative decisions to strike; the factfinder can examine a prosecutor's justifications in light of the characteristics of the jurors actually struck to determine generally whether the justifications were merely pretexts for racially motivated considerations.

In this respect, the *Batson* context differs decisively from the employment context, where the court can examine an employer's treatment of similarly situated applicants to test an employer's assertion that an Afro-American candidate would not have been hired absent a discriminatory motive. When an employer hires a white candidate over an Afro-American candidate, a factfinder can assess the employer's faithfulness to its own nonracial criteria by examining whether the particular white candidate's qualifications, as defined by the criteria, were superior to those of the Afro-American candidate. In the *Batson* context, though, the criteria underlying a prosecutor's peremptory challenges are private; a factfinder therefore lacks an independent means of evaluating the prosecutor's decisionmaking.

Thus, the "but for" test transforms a difficult credibility assessment—whether the prosecutor acted for the reasons he claims to have acted—into an impossible one—whether a prosecutor's nonracial ground for striking an Afro-American juror, taken alone, would have outweighed the prosecutor's possible grounds for objecting to unchallenged white jurors. The only choice, an untenable one at best, would be to accept at face value a prosecutor's claim that he "would have struck the Afro-American jurors anyway." A judicial inquiry designed to safeguard a criminal defend-

ant's basic constitutional rights should not rest on the unverifiable assertions of a prosecutor who, having admitted to racial bias, subsequently attempts to reconstruct what his thought process would have been had he not entertained such bias.

### III

*Batson*'s greatest flaw is its implicit assumption that courts are capable of detecting race-based challenges to Afro-American jurors. Assuming good faith on the part of all involved, *Batson*'s mandate requires the parties "to confront and overcome their own racism on all levels," *Batson* v. *Kentucky*, 476 U. S., at 106 (MARSHALL, J., concurring), a most difficult challenge to meet. This flaw has rendered *Batson* ineffective against all but the most obvious examples of racial prejudice—the cases in which a proffered "neutral explanation" plainly betrays an underlying impermissible purpose. To excuse such prejudice when it does surface, on the ground that a prosecutor can also articulate nonracial factors for his challenges, would be absurd. *Batson* would thereby become irrelevant, and racial discrimination in jury selection, perhaps the greatest embarrassment in the administration of our criminal justice system, would go undeterred. If such "smoking guns" are ignored, we have little hope of combating the more subtle forms of racial discrimination.

In sum, while I remain committed to my view that, until peremptory challenges are eliminated altogether, these challenges will inevitably be used to discriminate against racial minorities, *Batson* v. *Kentucky*, *supra*, at 103, 107–108 (MARSHALL, J., concurring), I would find that this Court's requirement that a prosecutor provide a "neutral" explanation for challenging an Afro-American juror means just what it says—that the explanation must not be tainted by *any* impermissible factors. Requiring anything less undermines an already underprotective means of safeguarding the integrity of the criminal jury selection process.