495 S.E.2d 205

**Edgar PAYTON, Respondent,**

v.

**Tina L. KEARSE, Petitioner.**

**No. 24740.**

Supreme Court of South Carolina.

Heard Oct. 2, 1996.

Decided Jan. 12, 1998.

Rehearing Denied Feb. 4, 1998.

Waller, J., joined by Moore, J., filed an opinion concurring in part and dissenting in part.

52

Lewis C. Lanier, of Horger, Horger & Lanier, Orangeburg; and Paul W. Owen, Jr., of Lourie & Safran, Columbia, for petitioner.

Daniel W. Williams, of Bedingfield & Williams, Barnwell; and J. Paul Detrick, of Peters, Murdaugh, Parker, Eltzroth & Detrick, Hampton, for respondent.

BURNETT, Justice:

We granted certiorari to review the Court of Appeals opinion in *Payton v. Kearse*, 319 S.C. 188, 460 S.E.2d 220 (Ct.App. 1995). We reverse.

## FACTS

Edgar Payton (Respondent) brought a negligence action against Tina Kearse (Petitioner) for injuries sustained in an automobile accident. The jury returned a verdict of $700,000 actual damages in favor of respondent.

Petitioner appealed alleging that the trial court erred in failing to find respondent's peremptory strikes during jury selection were racially motivated and by refusing to admit the testimony of her expert witness, Varner Richards. The Court of Appeals affirmed. *Id.*

## ISSUES

I. Did respondent use his peremptory strikes in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); and *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996)?

II. Did the lower courts err in failing to grant the petitioner a new trial based upon the exclusion of the testimony of Varner Richards?

## DISCUSSION

### I. Batson *Challenge*

Petitioner challenges respondent's use of his peremptory strikes under *Batson supra*, claiming the strikes were racially motivated. We agree.

 The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution prohibits the use of peremptory strikes in a discriminatory manner. *Id.* This prohibition applies in civil cases as well as criminal cases. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Chavous v. Brown*, 299 S.C. 398, 385 S.E.2d 206 (Ct.App.1989), *rev'd*, 302 S.C. 308, 396 S.E.2d 98 (1990), *vacated*, 501 U.S. 1202, 111 S.Ct. 2791, 115 L.Ed.2d 966, *aff'd on remand*, 305 S.C. 387, 409 S.E.2d 356 (1991). A party has standing to object to race-based peremptory strikes of venire persons even if the challenging party and the potential juror are not of the same race. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *State v. Dyar*, 317 S.C. 77, 452 S.E.2d 603 (1994).

Both petitioner and respondent are black. Respondent exercised all of his peremptory strikes to remove prospective white jurors. Petitioner requested a *Batson* hearing. After hearing respondent's reasons for striking the jurors, the trial court declared the reasons race-neutral and found respondent

had not violated *Batson.* We conclude the trial court erred in finding the reason offered to strike Juror 18 to be race-neutral on its face.

Recently, our Court adopted the standard delineated by the United States Supreme Court in *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), for analyzing a *Batson* challenge. *Adams, supra.* First, the trial judge must hold a *Batson* hearing when members of a cognizable racial group or gender are struck and the opposing party requests a hearing. The second step of the analysis requires the proponent of the strike to offer a race-neutral explanation. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race-neutral. In the third step, the opponent of the strike must show that the race-neutral explanation given was mere pretext. Pretext generally will be established by showing that similarly situated members of another race were seated on the jury. Under some circumstances, the race-neutral explanation given by the proponent may be so fundamentally implausible that the judge may determine, at the third step of the analysis, that the explanation was mere pretext even without a showing of disparate treatment. *Purkett, supra; Adams, supra.*

Here, we need not go beyond the second step of the analysis. Respondent's counsel offered the following reason for striking Juror 18:

> The juror number 18, she is known as [a] very opinionated person, your Honor, who expresses herself. We knew if she got on that jury she was not gone [sic] budge one way or the other, that she was gone [sic] get her way or no way. That was our opinion from what we had learned. Her family has—Mr. Lanier has talked about the number of people in trouble. She herself has not had any problems but she comes from a family that's had some problems with the law and she's kind of what we refer to as a *redneck variety,* so to speak, and that was the reason we struck her and, as you know, your Honor, I was concerned with her family, whether she had any problems with me or the law because some members of her family might have problems with the law.

(emphasis added).

The term "redneck" is a racially derogatory term applied

exclusively to members of the white race.[1] The use of the term "redneck" is not a valid race-neutral reason to strike a potential juror, and therefore, the strike is facially discriminatory and violates *Batson*. *See Wilkerson v. Texas*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989) (dissent from denial of petition for certiorari) (an explanation tainted by an impermissible factor is not neutral).

Respondent argues "redneck" is a descriptive term used to describe a person with a particular bias and is not discriminatory against the white race because these persons, like members of the KKK or Black Panthers, are struck because of their attitudes and prejudices. However, the term encompasses a broader group than just persons with certain undesirable characteristics. It stereotypes a subgroup of the white race without any evidence that each member of the group actually possesses these attitudes. Unlike members of the KKK or Black Panthers who voluntarily associate with others who hold the same prejudicial beliefs, "rednecks" have no such common prejudices or attitudes. A "redneck" should not be excluded from serving on a jury because of this stereotype.

Respondent also claims the context in which the term "redneck" was used should be considered when determining if the strike violated *Batson*. The context becomes relevant at the third step of the analysis when the court determines if a race-neutral reason was pretext. Here, because the reason offered was not race-neutral on its face, we need not reach the third step of the analysis.

■ Respondent further argues that by finding use of the term "redneck" violated *Batson*, we are preventing a party from obtaining a fair trial because a party cannot strike potential jurors who are biased against the party. However, the right to serve on a jury and not to be discriminated against because of race or gender belongs to the potential juror, not the party. *Edmonson, supra*. Our holding only

---

1. The term "redneck" is defined as "a member of the white rural laboring class ... offensive slang." The American Heritage Dictionary 1037 (2d college ed. 1985). In *Webster's New World Dictionary*, "redneck" is defined as "a poor, white rural resident of the South: often a somewhat derogatory term." Webster's New World Dictionary 1190 (2d college ed. 1976).

prevents a party from striking a juror based on a racially stereotypical reason. A party may still strike a juror based on actual known biases of a particular juror.

Further, we reject the dual motivation analysis employed by the Court of Appeals to uphold the strike.[2]

In *State v. Gill*, 319 S.C. 283, 460 S.E.2d 412 (Ct.App.1995) (Cureton, J., dissenting), *decision vacated*, 327 S.C. 253, 489 S.E.2d 478 (1997),[3] the South Carolina Court of Appeals reviewed the prosecution's strike of a black female juror in a criminal case. The prosecution had offered two reasons for the strike: (1) the juror had requested a hardship excuse; and (2) the juror lived on the same street as the defendant and the prosecution felt it was possible she might realize she knew the defendant. Because the prosecution allowed a white juror who had requested a hardship excuse to be seated, the trial court expressed concern that the first explanation for the strike of the black female was pretextual. However, the trial judge denied the defendant's *Batson* motion, concluding the second reason given for the strike was racially neutral notwithstanding the potential invalidity of the first reason. *Id.*

On appeal, the Court of Appeals assumed for purposes of analysis that the prosecution's first reason was pretextual. Nevertheless, the Court of Appeals concluded the prosecution had not violated *Batson*, reasoning that "an action motivated in part by an impermissible reason will not necessarily be invalid if the same action would have been taken in the absence of the impermissible motivation." *Id.* at 289, 460

---

2. Prior to this opinion, this Court had not addressed the application of this analysis in the *Batson* context. However, we note our previous case law could be interpreted as inconsistent on this issue. *Compare State v. Tomlin*, 299 S.C. 294, 384 S.E.2d 707 (1989) (finding the discriminatory reasons vitiated the two nondiscriminatory reasons given for the strike); *with State v. Martinez*, 294 S.C. 72, 362 S.E.2d 641 (1987) (finding no *Batson* violation where both a nondiscriminatory reason and a discriminatory reason had been given for the strike). Therefore, to the extent any previous opinions may be read as implicitly adopting the dual motivation analysis, they are overruled.

3. While this Court affirmed the conviction of Gill, it vacated the opinion of the Court of Appeals on the *Batson* issue finding the Court of Appeals erred in reaching this issue because it was not properly preserved for review. *State v. Gill*, 327 S.C. 253, 489 S.E.2d 478 (1997).

S.E.2d at 416 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Judge Cureton concurred in part and dissented in part. He first observed the "sole *Batson* issue before [the Court of Appeals] is whether the racially neutral explanation is sufficient to sustain the peremptory strike of the black juror even if the hardship explanation was, in fact, pretextual and constitutionally infirm." *Id.* at 294, 460 S.E.2d at 419. After noting the ultimate goal of *Batson* and its progeny is the elimination of discriminatory jury selection practices, Judge Cureton opined:

> Based on the above discussed precedential underpinnings of the *Batson* decision and its underlying rationale, I am of the opinion that even though the prosecutor may have given one racially neutral explanation, the racially motivated explanation, as evidenced by the finding of. pretext, vitiated the legitimacy of the entire jury selection procedure. Once it is found that the exercise of even one peremptory challenge is racially motivated, this in and of itself gives rise to an inference of discriminatory purpose and violates the mandates of *Batson,* which explicitly prohibits the State from exercising strikes in a racially discriminatory manner. To hold otherwise, I believe, completely guts the notion of pretext, and offends the policies underlying *Batson.*

*Id.* at 299–300, 460 S.E.2d at 421.

Judge Cureton then analyzed approaches used by other jurisdictions to answer the question of whether a discriminatory explanation will vitiate other neutral explanations for the peremptory strike.

Some courts follow an approach taken in other areas of Equal Protection jurisprudence[4] and have adopted the dual motivation doctrine. *See Howard v. Senkowski,* 986 F.2d 24 (2d Cir.1993). Under this doctrine, if the challenging party proves a discriminatory purpose, the challenged party has an opportunity to show the peremptory strike would have been

---

4. This doctrine has been adopted by the United States Supreme Court in other areas of Equal Protection analysis. *See Hunter v. Underwood,* 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985); *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

exercised even if the improper factor had not, in part, motivated the decision to strike. *Howard, supra.* Although the United States Supreme Court has not yet addressed this doctrine's applicability to a *Batson* challenge, other courts have followed *Howard* in adopting the dual motivation doctrine in the *Batson* context.[5] *See Jones v. Plaster,* 57 F.3d 417 (4th Cir.1995); *United States v. Darden,* 70 F.3d 1507 (8th Cir.1995), *cert. denied,* 517 U.S. 1149, 116 S.Ct. 1449, 134 L.Ed.2d 569 (1996); *Wallace v. Morrison,* 87 F.3d 1271 (11th Cir.1996).

However, other jurisdictions have adopted the "tainted" approach where a discriminatory explanation will vitiate the entire selection process regardless of the genuineness of the other explanations for the strike. *See United States v. Greene,* 36 M.J. 274 (C.M.A.1993) (strike violated *Batson* because the invalid reason vitiated the valid reasons); *Rector v. State,* 213 Ga.App. 450, 444 S.E.2d 862 (1994) (finding the invalid reason tainted the other valid reasons); *Moore v. State,* 811 S.W.2d 197 (Tex.App.1991) (finding a *Batson* violation where a juror would have a problem assessing punishment (valid) and was a member of a minority club (invalid)). Judge Cureton concluded South Carolina should adopt the "tainted" approach. *State v. Gill, supra.* We agree.

█ In our opinion, it is inappropriate to apply the dual motivation doctrine in the *Batson* context.[6] Once a discriminatory reason has been uncovered—either inherent or pretextual—this reason taints the entire jury selection procedure. By adopting dual motivation, this Court would be approving a party's consideration of discriminatory factors so long as sufficient nondiscriminatory factors were also part of the decision to strike a juror and the discriminatory factor was not the substantial or motivating factor. However, any consideration of discriminatory factors in this decision is in direct contravention of the purpose of *Batson* which is to ensure

---

5. We note a federal district court recently questioned the continued viability of *Howard* and its progeny in light of the "facially valid" standard enunciated by the United States Supreme Court in *Purkett. United States v. Somerstein,* 959 F.Supp. 592 (E.D.N.Y.1997).

6. We hinted at adopting this approach in our decision in *State v. Tomlin,* 299 S.C. 294, 384 S.E.2d 707 (1989).

peremptory strikes are executed in a nondiscriminatory manner. *See Rector v. State,* 444 S.E.2d at 865 ("[w]hile we realize that it is unrealistic to expect trial counsel to put aside every improper influence when selecting a juror, we conclude that is exactly what the law requires"); *see also State v. Tomlin, supra.* "[T]he harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community." *Georgia v. McCollum,* 505 U.S. 42, 49, 112 S.Ct. 2348, 2353, 120 L.Ed.2d 33, 44–45 (1992) (quoting *Batson,* 476 U.S. at 87, 106 S.Ct. at 1718, 90 L.Ed.2d at 81). "Active discrimination ... during th[e] process [of jury selection] condones violations of the United States Constitution within the very institution entrusted with its enforcement, and so invites cynicism respecting the jury's neutrality and its obligation to adhere to the law." *Powers v. Ohio,* 499 U.S. 400, 412, 111 S.Ct. 1364, 1374, 113 L.Ed.2d 411, 426 (1991). Thus, "[r]acial discrimination has no place in the courtroom whether the proceeding is civil or criminal." *Edmonson,* 500 U.S. at 630, 111 S.Ct. at 2088, 114 L.Ed.2d at 680 (1991).

Further, as applied, *Batson* is only effective against the most obvious examples of racial and gender prejudices. To excuse such obvious prejudice because the challenged party can also articulate nondiscriminatory reasons for the peremptory strike would erode what little protection *Batson* provides against discrimination in jury selection. The challenged party should not have an opportunity to convince the judge that he would have struck the juror regardless of the discriminatory reason.

## II. Expert Testimony

Although not necessary for the disposition of this case, we address the admissibility of the testimony of petitioner's expert witness because this issue is likely to arise again in the new trial.

Petitioner contends the trial judge erred in excluding the testimony of her expert witness, Varner Richards. We disagree.

The qualification of a witness as an expert and admissibility of his testimony are matters largely within the

discretion of the trial judge; however, the exercise of this discretion will be reversed where an abuse of discretion has occurred. *Creed v. City of Columbia,* 310 S.C. 342, 426 S.E.2d 785 (1993). Before expert medical testimony is admissible on the question of causation between the plaintiff's injuries and the acts of the defendant, the testimony must satisfy the "most probably" rule. *Baughman v. American Tel. & Tel. Co.,* 306 S.C. 101, 410 S.E.2d 537 (1991).

In his proffered deposition, Richards, who has a doctorate in pharmacy, identified six of the medications taken by respondent as possibly causing tinnitus as a side effect. Tinnitus was one of the injuries the respondent claimed was caused by the accident. Richards conceded he could not state any of the medications most probably caused respondent's tinnitus. Therefore, Richards was not qualified to testify that respondent's tinnitus was caused by the drugs. Because Richards' testimony was only relevant to the issue of causation, the trial judge properly excluded his testimony.

REVERSED.

FINNEY, C.J., and TOAL, A.J., concur.

WALLER, and MOORE, JJ., concurring in part and dissenting in part in separate opinion.

WALLER, Justice (Concurring in part and dissenting in part):

I concur with the majority insofar as it holds the expert testimony of Richards was properly excluded. I also concur with the finding that stating a juror is of the "redneck variety" is not a race neutral reason for exercising a peremptory challenge. However, I disagree with the decision that the "dual motivation principle" should not apply to this area of Equal Protection challenges. For that reason, and because if such a principle were employed here I would find no Equal Protection violation, I respectfully dissent.

Under the dual motivation principle, if a court concludes a peremptory strike "has been exercised in part for a discriminatory purpose, the court must consider whether the party whose conduct is being challenged has demonstrated by a preponderance of the evidence that the strike would have nevertheless been exercised even if an improper factor had not

motivated in part the decision to strike." *Jones v. Plaster,* 57 F.3d 417, 421 (4th Cir.1995). As the majority notes, this principle has been adopted by the Supreme Court in other areas of Equal Protection analysis in determining purposeful racial discrimination,[1] although that Court has not yet specifically addressed its applicability to a *Batson* challenge. However, a number of lower courts, including the Fourth Circuit Court of Appeals, have done so. *Jones,* 57 F.3d at 417. *See also Howard v. Senkowski,* 986 F.2d 24 (2d Cir.1993); *United States v. Darden,* 70 F.3d 1507 (8th Cir.1995), *cert. denied,* 517 U.S. 1149, 116 S.Ct. 1449, 134 L.Ed.2d 569 (1996); *Wallace v. Morrison,* 87 F.3d 1271 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 616, 136 L.Ed.2d 540 (1996). *See also Gattis v. State,* 697 A.2d 1174 (Del.1997); *People v. Pecor,* 286 Ill. App.3d 71, 221 Ill.Dec. 234, 675 N.E.2d 141 (1996), *cert. denied,* 173 Ill.2d 539, 226 Ill.Dec. 137, 684 N.E.2d 1340, *and cert. denied,* —— U.S. ——, 118 S.Ct. 429, 139 L.Ed.2d 329 (1997).

In *Howard v. Senkowski,* the Second Circuit Court of Appeals provided a comprehensive discussion of the application of dual motivation analysis as applied to discrimination in the exercise of peremptory challenges. That case focused on the interrelation between the three-step inquiry enunciated in *Batson* and the dual motivation principle:

> Dual motivation analysis, in effect, may supplement so-called "pretext" analysis, which applies to a claimant's "burden of persuading the court that [he or] she has been the victim of intentional discrimination." When the issue is the all-or-nothing question of whether or not an impermissible consideration motivated the challenged action ... pretext analysis employs the familiar three-step approach.... Once the claimant has proven improper motivation, dual motivation analysis is available to the person accused of discrimination to avoid liability by showing that the same action would have been taken in the absence of the improper motivation that the claimant has proven.

---

**1.** *See, e.g., Hunter v. Underwood,* 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985); *Personnel Adm'r v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

The two forms of analysis are not incompatible. The claimant always has to prove discriminatory motivation. If he succeeds, the accused party has an opportunity to show that there were really two motives and that a permissible motive would have led to the challenged action. In effect, the accused party is permitted to show, if he can, that the improper motivation proved by the claimant was only part, and not the decisive part, of the motivation.

986 F.2d at 27 (internal citations omitted).

In finding it proper to apply dual motivation analysis to this aspect of Equal Protection jurisprudence, *Howard* noted the Supreme Court's reliance on other types of Equal Protection cases (which utilized dual motivation) in reaching its seminal decision in *Batson v. Kentucky*.[2] *Id.*, 986 F.2d at 28 ("Since dual motivation analysis was explicitly invoked by the Supreme Court in the context of determining racial motivation for purposes of adjudicating a challenge under the Equal Protection Clause, and since *Batson* equated jury discrimination claims with 'any case alleging a violation of the Equal Protection Clause,' one might have thought there would be no question but that such analysis applies to an equal protection challenge based on racial motivation in any context, including the context of peremptory challenges") (internal citations omitted).[3]

*Batson* clearly emphasized it sought to further the "general equal protection principle that the 'invidious quality' of governmental action claimed to be racially discriminatory 'must ultimately be traced to a racially discriminatory purpose.'" 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 85 (quoting *Washington v. Davis*, 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597, 607–08 (1976)) (emphasis supplied). In my opinion, the majority's holding today goes far beyond this principle

2. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. Interestingly, the Second Circuit felt not adopting dual motivation analysis would be unfair to Equal Protection claimants. *See Howard*, 986 F.2d at 29 ("It is unlikely that in this 'most compelling' context [i.e. Equal Protection challenges related to discrimination in the judicial system], the Court intended to invoke a standard **more onerous** for claimants than that applicable in other equal protection contexts") (emphasis supplied). *Howard* was focusing on certain language from *Batson* where the Court held, "The Equal Protection Clause forbids the prosecutor to challenge potential jurors **solely** on account of their race." *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 83 (emphasis supplied).

and what Equal Protection requires.[4]

"In detailing the particulars of the *Batson* proof scheme, we are mindful that its sole purpose is to help courts and parties answer, 'not necessarily evade[,] the ultimate question of discrimination *vel non.*'" *Jones*, 57 F.3d at 421. I would find dual motivation analysis appropriate in the context of Equal Protection challenges to peremptory strikes, and thus affirm the Court of Appeals.

MOORE, A.J., concurs.

---

4. Technically, since the trial court did not have an opportunity to consider these issues in the context of the dual motivation principle, were this the majority opinion, remand would most likely be appropriate. Because this is not the majority opinion, I would only add that were I applying dual motivation analysis to the facts of this case, I would find Respondent met his burden of showing he would have struck juror eighteen without the offensive reason. Respondent gave several reasons for striking this juror: (1) she is opinionated; (2) she is stubborn; (3) she is headstrong and unwilling to listen to others; (4) her family has had problems with the law and she might have prejudices against Respondent's attorney or law enforcement, and (5) she is "kind of what we refer to as a redneck variety." Without doubt the first four reasons are race neutral. Respondent was concerned primarily that the juror would not be a "team player" with other jurors; he had some personal knowledge of her as being opinionated and unwilling to compromise. He was also concerned about certain prejudices she might have against him or law enforcement because of her family background.

Furthermore, Respondent's stating he struck juror eighteen because she was of a "redneck variety" is not precisely the same as saying he struck her because she was white. "Redneck" does not only refer to a person's racial status. It also means a "person who advocates a provincial, conservative, often bigoted sociopolitical attitude considered characteristic of a redneck." American Heritage Dictionary 1037 (2d college ed. 1982). The fact that this term can refer not only to race but also to beliefs and attitudes further supports the finding that under the circumstances of this case the ultimate reason Respondent struck the juror was not because of her race. I point out that while "redneck" can be used in a stereotypical sense, that is not what occurred in this case. Certainly, this is the ultimate evil to avoid when striking jurors: making the assumption that because a juror is a member of a certain race, he or she will have certain prejudices, sympathies or attitudes. With "redneck," the assumption is not based merely on race but on social or economic status, i.e. "because this juror is a redneck, she must have a provincial, conservative or bigoted sociopolitical attitude." In this case, however, Respondent was not assuming juror eighteen had certain undesirable attitudes because she was a lower-class white person; he based his conclusions on actual prior knowledge.