**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Daniel William Spade, Appellant.

Appellate Case No. 2014-000448

Appeal From Spartanburg County
R. Keith Kelly, Circuit Court Judge

Unpublished Opinion No. 2016-UP-352
Heard February 11, 2016 – Filed July 6, 2016

**AFFIRMED**

Clarence Rauch Wise, of Greenwood, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia; and Solicitor Barry Joe Barnette, of Spartanburg, for Respondent.

**PER CURIAM:** Appellant appeals his conviction for first-degree criminal sexual conduct (CSC) with a minor, arguing the trial court erred in (1) excluding a witness's testimony regarding the victim's (Victim) panic attacks, (2) finding Appellant improperly struck a juror based upon gender, (3) allowing a private

attorney to participate in the case when that attorney previously represented victim's mother (Mother) and adoptive father (Adoptive Father) in a related family court case, (4) ruling the private attorney was properly appointed pursuant to section 1-7-470 of the South Carolina Code (2005), and (5) failing to exclude therapist Meredith Thompson-Loftis's testimony based on the State's failure to turn over her records within a reasonable time.  We affirm.

**FACTS**

Appellant is Victim's biological father, and in September 2010, he traveled from his home in Virginia for visitation with Victim.  During the visit, Appellant sexually abused Victim in a bathroom located in the pool area of a Duncan, South Carolina hotel.

Victim—who was seven years old at the time of the February 2014 trial—testified Appellant stuck his "private part" in her mouth inside the bathroom and told her that if she did not perform the act he would not take her home.  Mother testified that when she picked Victim up from the visit, Victim displayed signs of extreme anxiety such as wetting herself and crying uncontrollably.  Mother alerted Appellant to Victim's high anxiety levels, but after another visit with Appellant in October 2010, Victim displayed continued anxiety.  Specifically, Mother testified Victim became terrified of the dark, hid in a corner and refused to come out, and suffered panic attacks.  Victim complained of stomach and head aches and would "revert back to the way a two year old would talk."  Mother subsequently sought anxiety counseling for Victim, and in November 2010, Mother filed to suspend Appellant's visitation based on Victim's anxiety.[1]  On cross-examination, Mother acknowledged Victim also showed signs of anxiety after visiting Appellant in Virginia in July 2010, and she admitted that the ten-day visit was the first time Victim had been away from her for an extended time period.

In March 2011, Victim disclosed the sexual abuse to her maternal grandmother (Grandmother).  Subsequently, Victim disclosed during a forensic interview with a Children's Advocacy Center employee that she was sexually abused at "the hotel with a pool."  Additionally, Victim disclosed abuse to Meredith Thompson-Loftis,

---

[1] The anxiety counselor diagnosed Victim with anxiety and adjustment disorder.  The counselor also testified Victim displayed nervousness and anxiety when asked to talk about Appellant, but Victim did not disclose sexual abuse.

who served as Victim's therapist after May 2011.[2]  The jury convicted Appellant of first-degree CSC with a minor.

## LAW/ANALYSIS

### I.  Exclusion of Grandmother's Testimony Concerning Panic Attacks

Appellant argues the trial court erred in excluding Grandmother's proffered testimony about Victim's panic attacks.  We disagree.

At trial, Appellant proffered Grandmother's testimony that Mother and Adoptive Father were present during all of Victim's panic attacks occurring before October 2012.  The State argued Appellant sought to introduce the proffered testimony "to shift to show that the panic attacks occurred with a certain individual."  Appellant denied he was attempting to establish third-party guilt and asserted he wanted to show there could be "non-criminal reasons" for the panic attacks.[3]  Appellant continued, "We are establishing explanation for symptoms, which [the State] is going to argue is a symptom of child sexual abuse and she's having panic attacks because of what [Appellant] did."  The circuit court ruled Appellant could call an expert to testify about causes for the panic attacks but disallowed the proffered testimony, stating it viewed the testimony "as sort of a back door to third-party guilt."  The trial court further determined that Appellant failed to show the evidence was inconsistent with Appellant's guilt.

On appeal, Appellant argues the exclusion of the proffered testimony left the jury with the impression that the attacks were caused by Appellant's sexual abuse.  The State's closing argument emphasized the connection between Victim's visits with Appellant and the panic attacks, and Appellant contends the trial court's exclusion rendered him unable to counter the argument with an alternative explanation.  Appellant asserts the proffered testimony provided an alternative explanation for Victim's anxiety, was not meant to suggest third-party guilt, and was relevant and probative because it was inconsistent with the State's theory of guilt.

"The trial [court] has considerable latitude in ruling on the admissibility of evidence and [its] decision should not be disturbed absent prejudicial abuse of discretion."  *State v. Cope*, 405 S.C. 317, 334–35, 748 S.E.2d 194, 203 (2013)

---

[2] The record indicates Appellant's parental rights were terminated in November 2012 due to abuse and failure to support.

[3] Third-party guilt issues were precluded before trial.

(quoting *State v. Clasby*, 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009)). "To show prejudice, there must be a reasonable probability that the jury's verdict was influenced by the challenged evidence or the lack thereof." *State v. White*, 372 S.C. 364, 374, 642 S.E.2d 607, 611 (Ct. App. 2007).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Rule 403, SCRE. "Unfair prejudice means an undue tendency to suggest decision on an improper basis." *State v. Dickerson*, 341 S.C. 391, 400, 535 S.E.2d 119, 123 (2000).

Although Appellant argued he wanted to use the proffered testimony to provide an alternative explanation for Victim's panic attacks, the substance of the proffer merely indicated Mother and Adoptive Father were present during all of Victim's panic attacks occurring before October 2012. No context was provided as to the circumstances existing before and during the attacks, and there was no indication of whether the panic attacks did or did not occur around the time of Appellant's visits with Victim. Thus, we agree with the circuit court that such evidence had potential to confuse or mislead the jury by suggesting Mother's and Adoptive Father's presence was somehow linked to Victim's anxiety when no other evidence was offered to that effect. Accordingly, we find no error in the trial court's decision to exclude the proffered testimony.[4]

## II. Improper Jury Strike

Appellant asserts the trial court erred in finding he improperly struck a juror. We disagree.

---

[4] Notably, the trial court stated Appellant could call an expert to testify about the causes of the panic attacks, but Appellant did not present such expert testimony at trial. Appellant also asked for and received permission to cross-examine Grandmother about "what was going on" during the panic attacks as long as he did not mention specific individuals. However, Appellant did not pursue this line of questioning during Grandmother's cross-examination.

Before trial, the State made a *Batson*[5] motion after Appellant used five of his six preemptory challenges on females. When asked for a gender-neutral reason for striking Juror 199, Appellant initially responded that he struck her because she was "a retired grandmother." After discussing additional jurors, Appellant was again asked about Juror 199, and he then indicated the strike was because of her "[a]ge and background." The trial court stated, "I am concerned about when you strike a grandmother. I mean, that by its very nature implies she's female. Nobody else can be a grandmother." Appellant responded, "It's the age, as well as the fact that we felt she was [a] retired grandmother, we felt that she just would not be—we felt it would be more prejudicial to my client. It had nothing to do with the fact that she's a female."

After a recess, the trial court ruled Appellant's strike of Juror 199 because she was a grandmother was not gender-neutral because "[o]nly females can be grandmothers." The trial court clarified it made this ruling despite Appellant's age-based argument. Upon reselection, Juror 199 was seated on the jury.

On appeal, Appellant asserts his initial strike of this female juror was gender-neutral, and the State failed to show direct evidence of discrimination such as identifying specific male jurors who were seated on the jury despite being approximately the same age as the stricken female juror.

"The trial court's findings regarding purposeful discrimination are accorded great deference and will be set aside on appeal only if clearly erroneous." *State v. Haigler*, 334 S.C. 623, 630, 515 S.E.2d 88, 91 (1999). "The trial [court's] findings of purposeful discrimination rest largely on [its] evaluation of demeanor and credibility." *State v. Edwards*, 384 S.C. 504, 509, 682 S.E.2d 820, 823 (2009).

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the striking of a venire person on the basis of race or gender." *State v. Rayfield*, 369 S.C. 106, 112, 631 S.E.2d 244, 247 (2006) (quoting *State v. Shuler,* 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001)). "In *Batson*, the United States Supreme Court outlined a three-step process for evaluating claims that peremptory challenges have been exercised in a manner violative of the Equal Protection Clause." *State v. Giles*, 407 S.C. 14, 18, 754 S.E.2d 261, 263 (2014).

> First, the opponent of the peremptory challenge must make a prima facie showing that the challenge was based

---

[5] *Batson v. Kentucky*, 476 U.S. 79 (1986).

on [gender or] race.  If a sufficient showing is made, the trial court will move to the second step in the process, which requires the proponent of the challenge to provide a [gender or] race neutral explanation for the challenge.

*Id.* (internal citation omitted).

"Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed [gender or] race-neutral." *Payton v. Kearse*, 329 S.C. 51, 55, 495 S.E.2d 205, 207 (1998).  "If the trial court finds that burden has been met, the process will proceed to the third step, at which point the trial court must determine whether the opponent of the challenge has proved purposeful discrimination." *Giles*, 407 S.C. at 18, 754 S.E.2d at 263.

We find Appellant's response that he struck Juror 199 because she was a grandmother was inherently discriminatory.  *Cf. Lewis*, 363 S.C. at 45, 609 S.E.2d at 519 (noting the explanation that a juror was stricken because she was a "housewife" was a discriminatory explanation).  As the trial court reasoned, only females can be grandmothers.  *Cf. Payton*, 329 S.C. at 55–56, 495 S.E.2d at 208 (stating the term "redneck" was a racially-derogatory term applied only to white people and was facially discriminatory).  Appellant's offer of a gender-neutral reason for a strike in addition to the inappropriate reason did not cure this constitutional transgression.  *See id*. at 59, 495 S.E.2d at 210 (rejecting the "dual motivation doctrine" and noting our courts follow the "tainted" approach "where a discriminatory explanation will vitiate the entire selection process regardless of the genuineness of the other explanations for the strike").  Accordingly, the trial court was not required to proceed to step three of the *Batson* process.  *See Giles*, 407 S.C. at 22, 754 S.E.2d at 265 ("The trial judge need not proceed to step three of the *Batson* process when no constitutionally permissible reason has been proffered at step two.").

## III.  Appointment of a Special Prosecutor

Appellant contends the trial court erred in allowing a private attorney (Private Counsel) to serve as a special prosecutor due to a conflict of interest and because the solicitor failed to produce a governor's commission for the appointment.  We disagree.

Before trial, Appellant objected to Private Counsel's appointment because he previously represented Mother and Adoptive Father during a 2012 family court

trial and, according to Appellant, "may have been [giving] advice to his clients at the time that is [in direct] contradiction to what [the State] would be presenting [at trial]." Appellant also contended there was no evidence the appointment was commissioned by the governor's office. The State justified the appointment by citing Private Counsel's familiarity with the case and the Solicitor's office's need for additional help due to an upcoming death penalty case. The trial court ruled the solicitor could appoint any licensed attorney as a special prosecutor, and because Private Counsel had not previously represented Appellant, there was no conflict.

> The trial court has discretion to allow the solicitor to have the assistance of counsel employed by the prosecuting witness or other person interested in securing a conviction with the consent of the solicitor. A special assistant solicitor is not automatically disqualified because of his simultaneous representation of an interested party. Disqualification occurs when a special assistant solicitor attempts to use his authority in the criminal action to the advantage of his civil client or otherwise compromises his neutrality in the criminal proceeding.

*State v. Nichols*, 325 S.C. 111, 119, 481 S.E.2d 118, 122 (1997) (internal citation omitted).

We find no evidence Private Counsel either used his authority as a special prosecutor to gain an advantage for a civil client or otherwise compromised his neutrality. Accordingly, there is no error. *See id.* at 119, 481 S.E.2d at 122–23 (finding no error when private attorneys hired by a victim's family were allowed to prosecute a murder case when the solicitor maintained control of the case and there was no evidence the private attorneys gained an unfair advantage in any related civil matter).

We find unpreserved Appellant's contention that Private Counsel was unqualified to serve as a special prosecutor because the solicitor failed to produce a governor's commission pursuant to section 1-7-470 of the South Carolina Code (2005). The trial court did not rule on the section 1-7-470 argument, nor did Appellant request a ruling on this specific point. Further, Appellant conceded the solicitor "does have the right to appoint a special prosecutor."

## IV. Admission of Thompson-Loftis's Testimony

Appellant argues the trial court erred in failing to exclude Thompson-Loftis's testimony because the State failed to turn over her records in violation of a pre-trial order. Additionally, Appellant contends the State's improper disclosures did not allow him time to evaluate the information with an expert. We disagree.

A pretrial order provided that if the State planned to call Thompson-Loftis as a witness, it had to disclose her records within a reasonable time prior to the trial. Thus, Appellant moved to exclude Thompson-Loftis's testimony because the State allegedly turned over twenty-two months of counseling records four days before trial. Appellant maintained the records had legibility issues and the short time frame prevented his experts from reviewing them. However, Appellant acknowledged he learned "nothing of major significance [from the records] that [he] could see or that [he] could translate in the four days." The trial court denied the motion, noting the records were straightforward and legible.

When Thompson-Loftis testified at trial that she had additional counseling records from January 2014, Appellant renewed his motion, stating he had not received any records dated after December 30, 2013. The trial court excluded the January 2014 records and disallowed testimony concerning anything that occurred after December 30, 2013. The trial court overruled Appellant's objection that Thompson-Loftis's testimony should be excluded altogether because the State violated the pretrial order.

"The trial [court] has considerable latitude in ruling on the admissibility of evidence and [its] decision should not be disturbed absent prejudicial abuse of discretion." *Cope*, 405 S.C. at 334–35, 748 S.E.2d at 203 (quoting *Clasby*, 385 S.C. at 154, 682 S.E.2d at 895). "To show prejudice, there must be a reasonable probability that the jury's verdict was influenced by the challenged evidence or the lack thereof." *White*, 372 S.C. at 374, 642 S.E.2d at 611.

"Rule 5, SCRCrimP, governs the disclosure of evidence in criminal cases." *State v. Landon*, 370 S.C. 103, 108, 634 S.E.2d 660, 663 (2006). "Under Rule 5(d)(2), SCRCrimP, when a party fails to comply with Rule 5, the court may order the noncomplying party to permit inspection, grant a continuance, prohibit introduction of the nondisclosed evidence, or enter such order as it deems just under the circumstances." *State v. Kerr*, 330 S.C. 132, 150, 498 S.E.2d 212, 221 (Ct. App. 1998).

The first alleged discovery violation relates to Thompson-Loftis's records from the period between February 2012 and December 2013. The majority of these records consist of notes and Victim's drawings from the counseling sessions. They also contain insurance documents, privacy and consent forms, releases, and a bill. Finally, the records contain a July 2011 counselor's report stating Victim was sexually abused by her biological father, a letter summarizing Victim's disclosures and advising that Victim not testify because of the risk of "severe emotional trauma," and an email summarizing Victim's disclosures. Although the State did not turn over these records until four days before trial, Appellant admitted that aside from learning the number of Victim's appointments with Thompson-Loftis, there was nothing of major significance that he could see or translate. Accordingly, Appellant cannot establish the requisite prejudice necessary to overturn the trial court's exercise of discretion in admitting the testimony.

Additionally, we hold the trial court committed no error when it excluded the undisclosed records from January 2014 and denied Appellant's renewed motion to exclude Thompson-Loftis's testimony. *See* Rule 5(d)(2), SCRCrimP ("If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may . . . prohibit the party from introducing evidence not disclosed . . . .").

Finally, to the extent Appellant argues the trial court should have continued the case so that he could evaluate the records with an expert, we note Appellant did not request a continuance. *See State v. Whipple*, 324 S.C. 43, 51, 476 S.E.2d 683, 687 (1996) (holding an appellant waived any right to complain about the lack of time to review recently disclosed documents when the appellant failed to seek additional time from the court and elected to go forward with trial).

**CONCLUSION**

Accordingly, Appellant's conviction is

**AFFIRMED.**

**LOCKEMY, C.J., and WILLIAMS and MCDONALD, JJ., concur.**