*Rodney Hart v. State*, No. 1015, Sept. Term 2022.  Opinion by Arthur, J.

**CRIMINAL LAW – PEREMPTORY CHALLENGES**

Under *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny, exercising peremptory challenges against a prospective juror on the basis of race, gender, or ethnicity violates the Equal Protection Clause of the Fourteenth Amendment.  When a party makes a *Batson* challenge, a court typically employs a three-step analysis.  The party challenging the strike must first make a prima facie showing that the opposing party's peremptory challenge was exercised on a constitutionally prohibited basis.  If that preliminary burden is satisfied, the burden shifts to the proponent of the strike to present a neutral explanation for the strike.  If a neutral explanation is offered, the trial court proceeds to decide whether the opponent of the strike has proved purposeful discrimination.

In this case, Hart made a *Batson* challenge when he objected after the prosecutor struck two men as prospective jurors.  At step two, the State offered both a neutral explanation (one juror had allegedly fallen asleep, and the State claimed to know nothing about the other) and a biased explanation (the State wanted gender diversity, which is to say that it wanted fewer men on the jury).  The trial court decided that because the State offered neutral explanations, Hart had not proved purposeful discrimination.

Neither the Supreme Court of the United States nor any Maryland appellate court has formally addressed what a court should do when a peremptory strike is motivated by both permissible and impermissible factors.  Other courts have coalesced around three different approaches.  The first is the dual-motivation or mixed-motive approach, under which the court cannot uphold the strike unless the proponent persuades the court that it would have struck the juror anyway even absent an impermissible consideration, such as race, gender, or ethnicity.  The second is the substantial motivating factor approach, under which the court cannot uphold the strike if it finds that an impermissible consideration was a substantial motivating factor for the strike (even if the party might also have struck the juror on the basis of a permissible consideration).  The third is the per se approach, under which the court cannot uphold the strike if it was motivated in any way by an impermissible consideration.

The Appellate Court of Maryland rejected the dual-motivation approach, recognizing the difficulty that a trial judge would face in performing a counterfactual thought experiment, in the midst of jury selection, while attempting to ascertain whether the proponent of the strike would have struck the juror on the permissible ground alone.  Because permitting blatant instances of discrimination to continue would be contrary to *Batson*'s purpose, the Court held that to protect the equal protection rights of the affected jurors and the integrity of the judicial system, it must reject the dual-motivation approach.

The Appellate Court of Maryland did not adopt the substantial motivating factor approach in this case, where the proponent of the strike had admitted that the strike was based in part on an impermissible consideration. Adopting the per se approach, the Appellate Court of Maryland held that a peremptory strike is per se invalid if it is based even in part on an impermissible consideration. The Court held that when the proponent of a strike admits that the strike was exercised for an impermissible reason, then the proponent has not advanced a neutral reason and the analysis does not progress beyond step two of *Batson*. The Court remanded the case for a new trial.

**CRIMINAL LAW – JOINDER OR SEVERANCE OF COUNTS**

The Appellate Court of Maryland held that the trial court did not err in denying Hart's motion to sever counts as to each of the thefts he was charged with. The Court held that where the thief's identity was at issue, modus operandi evidence was proper to establish the defendant's criminal agency. Because evidence concerning the thefts in this case demonstrated several distinctive and unique similarities that illustrated a common plan or scheme, the Court held that evidence of each would be mutually admissible in separate trials concerning the offenses. The Court held that the trial court did not abuse its discretion in ruling that the interests of judicial economy outweighed the risk of unfair prejudice to Hart.

Circuit Court for Prince George's County
Case No. CT210203X

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1015

September Term, 2022

_____

RODNEY LOPAZ HART, JR.

v.

STATE OF MARYLAND

_____

Graeff,
Arthur,
Getty, Joseph M.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed: February 28, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

A jury sitting in the Circuit Court for Prince George's County convicted appellant Rodney Lopaz Hart, Jr., of several offenses related to the theft of three automobiles. Hart has presented three questions on appeal, which we have reordered and reworded for clarity and concision:

    I.    Did the trial court err in denying a *Batson*[1] challenge where the prosecutor offered both a gender-based and a gender-neutral explanation for striking two prospective jurors?

    II.    Did the trial court err or abuse its discretion in ruling that the State did not commit a discovery violation when, on the evening before the trial began, it first disclosed a screenshot of a profile photo depicting Hart?

    III.    Did the trial court err in denying the defense's motion to sever the three theft counts from each other?[2]

For the following reasons, we conclude that the court erred in denying a *Batson* challenge when the State expressly stated that it struck two jurors in part because of an impermissible consideration—their gender. Consequently, we must reverse the convictions and remand the case for a new trial. Because Hart will receive a new trial,

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[2] Hart phrased his questions as follows:

1. Did the trial court err in determining that the State's late disclosure of a screenshot that was central to its case was not a discovery violation?

2. Did the trial court err in denying defense counsel's *Batson* challenge after the prosecutor failed to offer a gender-neutral explanation for striking two prospective jurors?

3. Did the trial court err and abuse its discretion in denying the defense's motion to sever counts?

we need not decide whether the court erred or abused its discretion in concluding that the State did not commit a discovery violation.  For guidance on remand, we address the question of severance and hold that the trial court did not err in denying the motion to sever.

## FACTS

During the jury-selection process, Hart asserted a *Batson* challenge after the State struck two men.  In response, the State proffered two reasons for the strikes.  First, the State asserted that it struck one of the men because he had been sleeping and the other because it had no information about him.  Second, the State asserted that it wanted to empanel a gender-diverse jury—i.e., it struck the jurors because they were men.[3]  The circuit court denied the challenge.

_____

[3] The discussion before the circuit court went as follows:

> [Defense Counsel]:  Your Honor, at this point we make a challenge under Batson.  The Juror Number 7 and Juror Number 19—sorry, 20, are both young men who did not answer any questions.  And so I think that there is at least a prima facia [sic] case made for the State to explain why they struck those two and not on the basis of their gender.

> [State's Attorney]:  On Number 7?  Do I need to answer that?

> The Court:  Okay.

> [State's Attorney]:  So on Number 7, I believe was sleeping during our initial questioning.  He looked like he was nodding, and I didn't look to see that he was attentive.  And Number 20—and I would like the Court to note that I struck the lady that is in my age group prior to Number 20.  I really was looking at some of the non-information.  He didn't—there is no juror occupation, there is nothing here, and I didn't have any information on it when I looked at it.  I don't know anything about him.

<span style="float:right">(continued)</span>

2

On the merits, the State alleged that, between the end of March and the beginning of April 2020, Hart stole three cars that had been advertised for sale through online marketplace apps. The defense contended that Hart was the victim of misidentification. The following facts were elicited:

Robert Ciecur testified that on March 27, 2020, he met a man named "Lorenzo," who was wearing a yellow jacket, at the College Park Metro Station. Lorenzo had messaged Ciecur earlier about buying a BMW 528 that he had advertised for sale on the OfferUp app. Ciecur testified that Lorenzo asked him to get out of the car so that he could test-drive it. When Ciecur did so, Lorenzo drove off and did not return.

---

> [Defense Counsel]: That's kind of the problem, Your Honor.
>
> [State's Attorney]: Well, if you're talking race, then what you're—
>
> [Defense Counsel]: I'm talking gender.
>
> The Court: Okay.
>
> [State's Attorney]: Okay. The gender here, there is—*the State has a reason, diverse gender*, and to be a man that I saw was sleeping. I even saw the lady that we relieved because of her mother—
>
> [Defense Counsel]: You talk to him, not me.
>
> [State's Attorney]: I'm sorry, I apologize—the lady that left because of her mother, I thought she was sleeping as well, because I looked at her, but I think that she was just kind of upset. But we end up move—losing her regardless. I believe that Number 7 was either asleep and/or inattentive during the questions. And Number 20, I looked at him, and I struck him because I didn't know anything about him.

(Emphasis added.)

Ciecur identified Hart in court as Lorenzo. Over Hart's objection, the State showed Ciecur a screenshot of a user profile on the app Letgo. Ciecur identified the person in the screenshot as the thief. The screenshot shows a man wearing glasses, a yellow jacket with the hood pulled up, and an N95-style mask.

Maurice Howard testified that on March 29, 2020, he met a man named "Lorenzo," who was wearing a hooded, yellow jacket and glasses, on Forestville Road in Prince George's County. Lorenzo had messaged Howard earlier about buying a 2004 Mercedes Benz C55 that he had advertised for sale on either the OfferUp or Facebook Marketplace app. As the two conversed outside the running car, Lorenzo asked if he could test-drive it. After obtaining Howard's permission, Lorenzo got into the car and drove off.

Howard could not identify Hart as Lorenzo. On cross-examination, the defense established that the police had shown Howard a photographic array, but that he had been unable to identify the thief.

Fawad Ahmed testified that, in late March or the beginning of April 2020, he met a man named "Lorenzo" in Vienna, Virginia. Lorenzo had messaged Ahmed about buying the 2016 Audi A6 that Ahmed had advertised for sale on the Letgo app. Lorenzo asked about trunk space. As Ahmed moved some items around in the trunk, Lorenzo got into the driver's seat and drove off. Ahmed identified Hart in court as the person who stole his car. In addition, when Ahmed was shown the screenshot that was also shown to Ciecur, he testified that the person in the screenshot was Lorenzo.

4

On April 10, 2020, Detective Donnell Thomas of the Prince George's County Police Department observed Hart driving an Audi with a registration plate that did not belong on it. The detective stopped the car and discovered that it had the same vehicle identification number as Ahmed's car. Hart was arrested.

After hearing the evidence, a jury convicted Hart of: (1) three counts of theft of property valued between $1,500 and $25,000; (2) three counts of unauthorized removal of a motor vehicle; (3) two counts of unauthorized taking of a motor vehicle;[4] and (4) three counts of rogue and vagabond as to a motor vehicle. After merging the lesser-included offenses into the theft convictions, the court sentenced Hart to an aggregate of 15 years of imprisonment, suspended all but three years, and placed him on probation for five years after his release from prison.

Hart filed a timely notice of appeal.

## DISCUSSION

### I. Batson Violation

In the landmark case of *Batson v. Kentucky*, 476 U.S. 79 (1986), the Court held that exercising a peremptory challenge against a prospective juror on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment. In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), the Court extended *Batson* to peremptory challenges on

---

[4] In this case, Hart was charged with two counts of unauthorized taking of a motor vehicle rather than three because only Ciecur's and Howard's vehicles were taken in Prince George's County. Ahmed's vehicle was taken in Fairfax County, Virginia.

the basis of gender.[5] In *Hernandez v. New York*, 500 U.S. 352, 369 (1991), a plurality of the Court suggested that *Batson* would also apply to peremptory challenges on the basis of ethnicity. *Accord Mejia v. State*, 328 Md. 522, 529-30 (1992); *see Hernandez v. State*, 357 Md. 204, 231 (1999). "Excusing a juror on any of those bases violates both the defendant's right to a fair trial and the potential juror's 'right not to be excluded on an impermissible discriminatory basis.'" *Ray-Simmons v. State*, 446 Md. 429, 435 (2016) (quoting *Edmonds v. State*, 372 Md. 314, 329 (2002)). Both the prosecution and the defense may invoke *Batson*. *See, e.g.*, *Georgia v. McCollum*, 505 U.S. 42 (1992).

*Batson* and its progeny have three underlying purposes: 1) to protect a defendant's right to a fair trial; 2) to protect a potential juror's right not to be excluded from serving on a jury because of a discriminatory purpose; and 3) to preserve public confidence in the judicial system. *Edmonds v. State*, 372 Md. at 329 (citing *Powers v. Ohio*, 499 U.S. 400, 404-10 (1991)); *accord Flowers v. Mississippi*, 588 U.S. ___, 139 S. Ct. 2228, 2242 (2019) (stating that, "[b]y taking steps to eradicate racial discrimination from the jury selection process, *Batson* sought to protect the rights of defendants and jurors, and to enhance public confidence in the fairness of the criminal justice system"). Under the Equal Protection Clause, even a single instance of unlawful discrimination against a

---

[5] Even before the decision in *J.E.B.*, Maryland's highest court had held that, as a matter of Maryland constitutional law, "the State may not use peremptory challenges to exclude potential jurors because of their gender." *Tyler v. State*, 330 Md. 261, 266 (1993).

prospective juror is impermissible. *See*, *e.g.*, *Flowers v. Mississippi*, 588 U.S. ___, 139 S. Ct. at 2244.

When a party makes a *Batson* challenge, a court typically employs a three-step process.

At step one, the party challenging the strike "must make a prima facie showing— produce some evidence—that the opposing party's peremptory challenge to a prospective juror was exercised on one or more of the constitutionally prohibited bases." *Ray-Simmons v. State*, 446 Md. 429, 436 (2016) (citing *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (per curiam)). A party can make a prima facie case by showing "'that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" *Id.* (quoting *Johnson v. California*, 545 U.S. 162, 168 (2005)). A pattern of strikes against jurors of a particular race, gender, or ethnicity "'might give rise to or support or refute the requisite showing.'" *Id.* (quoting *Stanley v. State*, 313 Md. 50, 60-61 (1988)).

"If the objecting party satisfies that preliminary burden, the court proceeds to step two[.]" *Id.* There, "'the burden of production shifts to the proponent of the strike to come forward with' an explanation for the strike that is neutral as to race, gender, and ethnicity." *Id.* (quoting *Purkett v. Elem*, 514 U.S. at 767). The explanation "must be neutral, 'but it does not have to be persuasive or plausible.'" *Id.* (quoting *Edmonds v. State*, 372 Md. at 330); *see Purkett v. Elem*, 514 U.S. at 767. "'Any reason offered will be deemed [neutral] unless a discriminatory intent is inherent in the explanation.'" *Ray-Simmons v. State*, 446 Md. at 436 (quoting *Edmonds v. State*, 372 Md. at 330); *see Hernandez v. New York*, 500 U.S. at 360; *see also Purkett v. Elem*, 514 U.S. at 767-68

7

(stating that, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed [neutral]"). "[T]he question of whether the challenger has made a prima facie case under step one becomes moot if the striking party offers an explanation for the challenged strike." *Ray-Simmons v. State*, 446 Md. at 437; *see Hernandez v. New York*, 500 U.S. at 359.

If the proponent of the strike offers a neutral explanation, "the trial court proceeds to step three," at which it "must decide 'whether the opponent of the strike has proved purposeful [impermissible] discrimination.'" *Ray-Simmons v. State*, 446 Md. at 437 (quoting *Purkett v. Elem*, 514 U.S. at 767). Only at step three does "'the persuasiveness of the justification become[] relevant.'" *Id.* (quoting *Johnson v. California*, 545 U.S. at 171) (further citation omitted). Here, "'the trial court determines whether the opponent of the strike has carried [the] burden of proving purposeful discrimination.'" *Id.* (quoting *Johnson v. California*, 545 U.S. at 171) (further citation omitted). "At this step, 'the trial court must evaluate not only whether the [striking party's] demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the [striking party].'" *Id.* (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)). "Because a *Batson* challenge is largely a factual question, a trial court's decision in this regard is afforded great deference[.]" *Id.*

In this case, the State does not dispute that Hart made a prima facie case of gender discrimination at step one, when he objected that the State had struck two men. At step two, the State offered both a neutral explanation (one juror had allegedly fallen asleep,

8

and the State claimed to know nothing about the other) and a biased explanation (the State wanted gender diversity, which is to say that it wanted fewer men on the jury).

This Court has held that the State violated *Batson* and its progeny by striking eight of nine male jurors in order to obtain a "gender-balanced" jury. *Elliott v. State*, 185 Md. App. 692, 717 (2009). Thus, this case presents the question of whether the strikes can be saved because the State offered a neutral explanation as well as a gender-biased explanation.

Neither the Supreme Court of the United States nor any Maryland appellate court has formally addressed what a court should do when a peremptory strike is motivated by both permissible and impermissible factors—though this Court flagged the issue in *Elliott v. State*, 185 Md. App. at 719 n.14, and discussed it in dicta in a lengthy footnote in *Khan v. State*, 213 Md. App. 554, 570 n.3 (2013). Other courts have coalesced around three different approaches. They are:

> (1) the dual-motivation or mixed-motive approach, under which the court cannot uphold the strike unless the proponent persuades the court that it would have struck the juror anyway even absent an impermissible consideration, such as race, gender, or ethnicity;
>
> (2) the substantial motivating factor approach, under which the court cannot uphold the strike if it finds that an impermissible consideration was a substantial motivating factor for the strike (even if the party might also have struck the juror on the basis of a permissible consideration); and
>
> (3) the per se approach, under which the court cannot uphold the strike if it was motivated in any way by an impermissible consideration.[6]

---

[6] Some courts refer to the per se approach as the "tainted approach." *See, e.g.,* *McCormick v. State*, 803 N.E.2d 1108, 1113 (Ind. 2004). That term is a misnomer. The

(continued)

## A. The Dual-Motivation or Mixed-Motives Approach

The dual-motivation approach is the prevailing position in many federal circuits, *see Gattis v. Snyder*, 278 F.3d 222, 234-35 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *United States v. Darden*, 70 F.3d 1507, 1531 (8th Cir. 1995), *cert. denied*, 517 U.S. 1149 (1996); *Wallace v. Morrison*, 87 F.3d 1271, 1274-75 (11th Cir.) (per curiam), *cert. denied*, 519 U.S. 1044 (1996); *Howard v. Senkowski*, 986 F.2d 24, 30 (2d Cir. 1993); *see also Jones v. Plaster*, 57 F.3d 417, 420-22 (4th Cir. 1995) (adopting the dual-motivation to *Batson* challenges in a civil case);[7] as well as in some state courts. *People v. Hudson*, 195 Ill.2d 117, 133-38, 745 N.E.2d 1246, 1256-58 (2001); *Guzman v. State*, 85 S.W.3d 242, 244 (Tex. Crim. App. 2002).

In the leading case of *Howard v. Senkowski*, 986 F.2d at 25, Howard, who is Black, had been convicted by an all-White jury in a New York state court after the prosecution struck the two Black jurors in the venire panel. While Howard's appeal was pending in the state appellate court, the Supreme Court decided *Batson*. *Id.* Because *Batson* applied retroactively to decisions pending on direct appeal,[8] the state appellate court remanded the case for an evidentiary hearing on the prosecutor's reasons for striking both of the two Black jurors. *Id.*

---

"approach" is not "tainted." Rather, the approach deems the strike to be tainted if it was motivated in any way by an impermissible consideration.

[7] *Batson* applies in both criminal and civil litigation. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614 (1991).

[8] *Id.* (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)).

On remand, the prosecutor admitted that race was "a factor," but not (he said) an "'overriding'" or a "'major'" factor, in his decision to strike the Black jurors. *Id.* He "endeavor[ed]" to offer some race-neutral reasons as well. *Id.*

The state trial court followed *Batson*'s three-step process and found that "race had been 'part of a totality of factors' for the prosecutor's challenges, that the prosecutor had articulated neutral explanations, and that the explanations were not pretextual." *Id.* at 26. Thus, the state trial court concluded that Howard had failed to "establish purposeful discrimination." *Id.* A state appellate court affirmed. *Id.*

In Howard's collateral attack on his conviction under the federal habeas corpus statute, the federal district court framed the issue as whether "'the prosecutor's explanations were sufficiently race-neutral to rebut the *prima facie* showing of discrimination.'" *Id.* The district court dismissed the petition. *Id.*

On appeal, Howard contended "that the prosecutor's admission that race was 'a factor' in exercising the peremptory challenges precluded a finding that the prosecutor had articulated a race-neutral explanation." *Id.* The Second Circuit "disagree[d] with that precise contention[.]" *Id.* It wrote that "[t]he acknowledgment that race was part of the prosecutor's motivation, or even a finding to that effect unaided by an acknowledgment, is not inconsistent with the existence of some other race-neutral explanation for the prosecutor's action." *Id.* In the court's view, "[w]here more than one reason motivates challenged action, the issue is what standards apply in determining whether the action is invalid because of the partially improper motivation." *Id.*

11

The court asserted that, "[i]n the realm of constitutional law, whenever challenged action would be unlawful if improperly motivated, the Supreme Court has made it clear that the challenged action is invalid if motivated in part by an impermissible reason but that the alleged offender is entitled to the defense that it would have taken the same action in the absence of the improper motive." *Id.* (citing *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284-87 (1977); *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 n.21 (1977)). The court observed that the Supreme Court had applied that dual-motivation analysis in some equal protection cases. *Id.* at 27 (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. at 270 n.21; *Hunter v. Underwood*, 471 U.S. 222, 228 (1985)).[9] And the court recognized that dual-motivation analysis applies in actions for damages under Title VII of the Civil Rights Act of 1964, when a defendant asserts that it would have acted as it did even if it were not motivated to discriminate on the basis of a prohibited characteristic such as race or sex. *Id.* at 26 n.1 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-47 (1989) (plurality opinion).[10] "Dual motivation analysis," the court wrote, "in effect, may supplement so-

_____

[9] *But see* Russell D. Covey, *The Unbearable Lightness of Batson: Mixed Motives and Discrimination in Jury Selection*, 66 Md. L. Rev. 279, 315 & n.201 (2007) (citing *Miller v. Johnson*, 515 U.S. 900, 916 (1995), for the proposition that the Court has employed a different standard in redistricting cases that involve equal protection challenges).

[10] *Batson*'s framework of presumptions and shifting burdens is derived from Title VII jurisprudence. *Batson v. Kentucky*, 476 U.S. at 94 n.18; *see* Russell D. Covey, *The Unbearable Lightness of Batson: Mixed Motives and Discrimination in Jury Selection*, 66 Md. L. Rev. 279, 330-31 (2007) (stating that "*Batson*'s architecture was borrowed almost wholesale from two leading Title VII intentional discrimination cases"). Notably,

(continued)

12

called 'pretext' analysis, which applies to a claimant's 'burden of persuading the court that [he or] she has been the victim of intentional discrimination.'" *Id.* at 27 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Thus, the Second Circuit imported the dual-motivation analysis from equal protection and Title VII cases into *Batson*. *Id.* at 30. It held that "*Batson* challenges may be brought by defendants who can show that racial discrimination was a substantial part of the motivation for a prosecutor's peremptory challenges, leaving to the prosecutor the affirmative defense of showing that the same challenges would have been exercised for race-neutral reasons in the absence of such partially improper motivation." *Id.* "If the state makes such a showing, the peremptory challenge survives constitutional scrutiny." *Gattis v. Snyder*, 278 F.3d at 233.

In essence, the dual-motivation or mixed-motive approach treats the presence of multiple grounds—some neutral, some not—as a causation problem. It assumes that the proponent of the strike can get past step two of *Batson* by offering a neutral and permissible ground (even though the proponent has also offered an impermissible ground, such as race or gender). It proceeds to engage in a thought experiment, attempting to ascertain whether the proponent of the strike would have struck the juror on the permissible ground alone. The court may uphold the strike if the proponent persuades the

---

however, Congress amended Title VII after the *Price Waterhouse* decision. As amended Title VII provides that if an employer acted with discriminatory intent, but proved that it would have "taken the same action in the absence of the impermissible motivating factor," a court may not award damages, but may grant declaratory relief and some forms of injunctive relief and may award attorneys' fees and costs. 42 U.S.C. § 2000e-5(g)(2)(B).

court that it would have struck the juror on the permissible ground. In other words, the court may uphold the strike, "'despite clear evidence of racially discriminatory motivation,'" if the proponent succeeds in showing "'that the discriminatory motivation was not a "but for" cause of the challenged decision.'" *Cook v. LaMarque*, 593 F.3d 810, 814 (9th Cir. 2010) (quoting *Kesser v. Cambra*, 465 F.3d 351, 372 (9th Cir. 2006) (en banc) (Wardlaw, J. concurring)).

After a number of federal courts of appeal had imported the dual-motivation or mixed-motive analysis into *Batson*, the United States Supreme Court had the opportunity to consider how to evaluate the issue of causation in a *Batson* challenge. In *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008), the prosecution asserted that it had struck a Black juror on two facially neutral grounds—he appeared nervous, and his student-teaching obligations might lead him to agree to a quick resolution in which the jurors compromised and found the defendant guilty of a lesser charge.[11] The Supreme Court determined, however, that the trial court had upheld the strike only on the second ground. *Id.* at 482. The Court also determined that the stated ground for the strike was "suspicious" and "implausi[ble]," in large part because the prosecution did not strike White jurors who had similarly pressing obligations. *Id.* at 483.[12]

---

[11] Thus, *Snyder* is unlike this and other cases in which the proponent of the strike offered both a neutral reason and a discriminatory reason for the strike.

[12] In addition, the Court recognized that the juror's desire for a quick resolution might actually lead him to agree to convict the defendant on the most serious charges if the majority of the jurors initially favored that outcome. *Id.* at 482.

At this point, the Court turned to step three of *Batson*, asking whether the defendant had shown purposeful discrimination. *Id.* at 484-85. Here, the Court observed that "[t]he prosecution's proffer of this pretextual explanation naturally gives rise to an inference of discriminatory intent." *Id.* at 485. Citing *Hunter v. Underwood*, 471 U.S. 222, 228 (1985), a case that applied the dual-motivation approach to an equal protection claim, the Court wrote: "In other circumstances, we have held that, once it is shown that a discriminatory intent was a substantial or motivating factor in an action taken by a state actor, the burden shifts to the party defending the action to show that this factor was not determinative." *Snyder v. Louisiana*, 552 U.S. at 485. But the Court cautioned that it had not "previously applied this rule in a *Batson* case," and that it "need not decide here whether that standard governs in this context." *Id.* "For present purposes," the Court said, "it is enough to recognize that a peremptory strike shown to have been motivated in substantial part by discriminatory intent could not be sustained based on any lesser showing by the prosecution." *Id.* "Here, 'lesser showing' means any showing *less than the burden-shifting showing required in the other cases* where the Court has permitted the [proponent of the strike] to show that the forbidden motive 'was not determinative.'" Sheri Lynn Johnson, *Flowers for the Arlington Heights Footnote: The Slow Demise of Mixed Motives Analysis*, 57 Ind. L. Rev. 7, 28 (2023) (emphasis in original).

Because of the absence of any record evidence that the trial court had credited the claim about the juror's alleged nervousness, because the prosecution had stated that the juror's work schedule was its main concern, and because of the "adverse inference" that could be drawn from the prosecution's pretextual explanation for the strike, the Court

15

concluded that "the record does not show that the prosecution would have pre-emptively challenged [the juror] based on his nervousness alone." *Snyder v. Louisiana*, 552 U.S. at 485. "Nor," the Court added, was "there any realistic possibility that this subtle question of causation could be profitably explored further on remand at this late date, more than a decade after [the] trial." *Id.* at 486. Accordingly, the Court reversed the conviction. *Id.*

In summary, in *Snyder v. Louisiana*, the Court did not decide whether the dual-motivation analysis applies to *Batson* claims. The Court explained that, even under the most forgiving approach, the proponent of the strike would have the burden of showing that the discriminatory motive "was not determinative." *Id.* at 485. The prosecution could not meet that burden in *Snyder*. *See* Sheri Lynn Johnson, *Flowers for the Arlington Heights Footnote*, *supra*, 57 Ind. L. Rev. at 31 (explaining that in *Snyder* "the record itself did not reflect that the prosecution would have pre-emptively challenged the juror based on a permissible purpose alone").[13]

---

[13] In *Foster v. Chatman*, 578 U.S. 488, 513 n.6 (2016), the Court stated that, "as in *Snyder*," it "need not decide the availability of" a defense that a discriminatory intent was not "'determinative' to the prosecution's decision to exercise the strike," because the State did not raise that argument. By contrast, in *Flowers v. Mississippi*, 588 U.S. ___, 139 S. Ct. 2228, 2251 (2019), the Court reversed a conviction on *Batson* grounds without mentioning the potential defense that a discriminatory intent was not "determinative." "All that we need to decide," wrote the Court, "is that all of the relevant facts and circumstances taken together establish that the trial court at Flowers' sixth trial committed clear error in concluding that the State's peremptory strike of black prospective juror Carolyn Wright was not motivated in substantial part by discriminatory intent." *Id*. One scholar has argued that *Flowers* overrules the dual-motivation cases, *sub silentio*. *See* Sheri Lynn Johnson, *Flowers for the Arlington Heights Footnote*, *supra*, 57 Ind. L. Rev. at 7-8; *id.* at 33; *id.* at 51.

## B. The Substantial Motivating Factor Approach

In a federal habeas corpus case decided shortly after *Snyder*, the Ninth Circuit expressly declined to adopt the dual-motivation or mixed-motives approach. *Cook v. Lamarque*, 593 F.3d 810, 814 (9th Cir. 2010). In reaching that decision, the court observed that, in an en banc decision several years earlier, a majority of the judges of that court had "declined to adopt the mixed-motives approach, despite an extensive concurring opinion advocating its adoption." *Id.* (citing *Kesser v. Cambra*, 465 F.3d 351, 371 (9th Cir. 2006) (en banc)).[14] The court claimed that the Supreme Court had "declin[ed] to adopt" the mixed-motives approach in *Snyder*. *Id.*[15] In addition, the court found it significant that *Snyder* recognized the difficulty of "profitably" exploring "'this subtle question of causation,'" many years after the trial, as a court would have to do in a collateral attack on a judgment. *See id.* at 815 (quoting *Snyder v. Louisiana*, 552 U.S. at 486).

In rejecting the mixed-motives approach, the Ninth Circuit said that it would "limit" its "inquiry to whether the prosecutor was 'motivated in substantial part by

_____

[14] In *Kesser v. Cambra*, 465 F.3d at 371, the majority concluded that, "[t]aken as a whole, the record reveals that all of the prosecutor's nonracial reasons for striking [a Native American woman] and most of his nonracial reasons for striking" what the prosecutor called "the other 'darkest skinned women' from the panel were pretextual." As in *Snyder v. Louisiana*, which was decided a year later, the Ninth Circuit majority apparently saw no valid reason for the strikes.

[15] More precisely, in *Snyder*, the Supreme Court stated that "we need not decide here whether that standard governs in this context." *Snyder v. Louisiana*, 552 U.S. at 485; *see* Sheri Lynn Johnson, *Flowers for the Arlington Heights Footnote*, *supra*, 57 Ind. L. Rev. at 28 (recognizing that the Ninth Circuit was incorrect in saying that *Snyder* rejected the dual-motivation approach).

discriminatory intent.'" *Id.* (quoting *Snyder v. Louisiana*, 552 U.S. at 485). The court indicated that a strike, "motivated in substantial part by discriminatory intent," would be invalid if the impermissible motivation was merely a cause, and not a but-for cause, of the strike. *See id.* at 814-15.

In the case before the Ninth Circuit, unlike this case, the prosecutor had not justified the questioned strikes on the basis of a permissible reason as well as a reason that was impermissible on its face. Instead, the prosecutor had offered a number of facially neutral reasons that were alleged to be pretextual. *Id.* at 816-25. Thus, the Ninth Circuit proceeded to step three of *Batson* to examine whether the neutral reasons were pretextual and whether any impermissible reasons were a substantial motivating factor for a strike. *Id.* A majority of the three-judge panel held that, in upholding the strikes, the state trial court had not been objectively unreasonable, the governing standard in a collateral attack on a state judgment in a federal habeas corpus action. *Id.*

A third judge agreed with the majority's rejection of the mixed-motives approach, writing that "[t]he difficult task of 'ferreting out discrimination' would be made nearly impossible by a 'but for' causation requirement, which would require a court to engage in counterfactual reasoning, often with only a sparse record to guide it." *Id.* at 828 (Hawkins, J., concurring in part and dissenting in part) (citing *Kesser v. Cambra*, 465 F.3d at 376-77 (Berzon, J., concurring)). He added that "[p]ermitting blatant instances of discrimination to go undeterred . . . would be contrary to *Batson*'s purpose, eviscerate its protections in many cases, and erode public confidence in the neutrality of the criminal justice system." *Id*. The third judge dissented, in part, because he disagreed with the

18

majority's conclusion that race had not been a substantial motivating factor in some of the strikes. *Id.* at 828-29.

Since 2010, only one court outside of the Ninth Circuit has followed *Cook v. Lamarque* in substituting the substantial motivating factor approach for the dual-motivation or mixed-motives approach. In *State v. Ornelas*, 156 Idaho 727, 330 P.3d 1085 (Ct. App. 2014), Idaho's intermediate appellate court considered how to proceed when a prosecutor had struck a juror for an impermissible reason (he was a man) and for three permissible reasons (he was young, the prosecutor was concerned about his life experiences, and he had a small child). *Id.* at 733, 330 P.3d at 1091. "It [was] not apparent from the transcript that the [trial] court considered the gender-based reason" before it rejected a *Batson* challenge. *Id.* at 738, 330 P.3d at 1096.

After surveying the various approaches that courts have taken (including the so-called "per se approach," which we discuss below), the court concluded that in *Snyder v. Louisiana* the Supreme Court had "set[] a guideline that a peremptory strike violates the Equal Protection Clause when the strike is 'motivated in substantial part by discriminatory intent.'" *Id.* at 736, 330 P.3d at 1094.[16] The court interpreted *Snyder v. Louisiana* to require that, "where both permissible and impermissible reasons are provided at the second step," a court should "continue to the third step." *Id.* at 737, 330

_____

[16] Like the Ninth Circuit in *Cook v. Lamarque*, the Idaho court treated *Snyder* as though it rejected the mixed-motives approach. To the contrary, *Snyder* expressly declined to decide what approach would govern. *Snyder v. Louisiana*, 552 U.S. at 485; *see supra* n.15.

19

P.3d at 1095.[17]  Like the Ninth Circuit, the court decided that, "[a]t the third step," a trial

"court must determine if the peremptory strike was motivated in substantial part by

discriminatory intent[.]"  *Id.*  Because of the sparse record and the announcement of a

new standard, the Idaho court remanded the case for further proceedings.  *Id.* at 738, 330

P.3d at 1096.[18]

## C. The Per Se Approach

Meanwhile, many courts—particularly state courts—have held that a peremptory

strike is invalid per se if it involves any consideration of an impermissible factor, such as

race or gender.  *See State v. Lucas*, 199 Ariz. 366, 369, 18 P.3d 160, 163 (Ct. App. 2001)

(holding that, "[r]egardless of how many other nondiscriminatory factors are considered,

any consideration of a discriminatory factor directly conflicts with the purpose of *Batson*

and taints the entire jury selection process"), *cert. denied*, 534 U.S. 1014 (2001); *People*

*v. Douglas*, 22 Cal. App. 5th 1162, 1164-65, 232 Cal. Rptr. 3d 305, 307 (Ct. App. 2018)

(rejecting the dual-motivation approach and holding that jury selection "should be free of

*any* bias") (emphasis in original); *People v. Johnson*, 523 P.3d 992, 997 (Colo. App.

---

[17] *Snyder*, however, is not a case in which the proponent of the strike expressed permissible and impermissible grounds.  It is a case in which the proponent expressed a facially neutral explanation, which the Court found to be pretextual.

[18] Although *Ornelas* is the only case that has expressly followed the Ninth Circuit's decision in *Cook v. Lamarque*, a number of federal courts have begun to ask whether "the strike is motivated in substantial part by discriminatory intent" since the Supreme Court reiterated and employed that standard in *Flowers v. Mississippi*, 588 U.S. ___, 139 S. Ct. 2228, 2251 (2019).  *See* Sheri Lynn Johnson, *Flowers for the Arlington Heights Footnote*, *supra*, 57 Ind. L. Rev. at 31 (citing *Hunt v. Sunquist*, 822 Fed. Appx. 468 (6th Cir. 2020); *United States v. Adams*, 996 F.3d 514, 520 (8th Cir. 2021)).

2022) (adopting the per se approach and rejecting the substantial motivating factor approach when the proponent of a strike offers both race-based and race-neutral reasons), *cert. granted*, 2023 WL 3587455 (Colo. May 22, 2023); *Robinson v. United States*, 890 A.2d 674, 681 (D.C. 2006) (holding that, "even where the exclusion of a potential juror is motivated in substantial part by constitutionally permissible factors . . . , the exclusion is a denial of equal protection and a *Batson* violation if it is partially motivated as well by the juror's race or gender"); *Rector v. State*, 213 Ga. App. 450, 454, 444 S.E.2d 862, 865 (Ct. App. 1994) (holding that a finding of one racially-motivated consideration vitiates the legitimacy of the jury selection procedure); *McCormick v. State*, 803 N.E.2d 1108, 1112-13 (Ind. 2004) (expressly rejecting the "dual motivation analysis in the *Batson* context" and holding that a strike is "tainted" if one of multiple reasons for the strike is impermissible); *State v. Coleman*, 970 So.2d 511, 515-16 (La. 2007) (holding that, "[o]nce an inappropriate explanation invoking racial considerations is made, a subsequent, valid reason for exercising the peremptory challenge cannot purge the racial taint"); *Payton v. Kearse*, 329 S.C. 51, 59, 495 S.E.2d 205, 210 (1998) (expressly rejecting the "dual motivation doctrine" and holding that "[o]nce a discriminatory reason has been uncovered—either inherent or pretextual—this reason taints the entire jury selection procedure"); *State v. King*, 215 Wis.2d 295, 307-09, 572 N.W.2d 530, 535-36 (Ct. App. 1997) (expressly rejecting the dual-motivation approach and holding that a prosecutor violated *Batson* when it struck jurors because they were older and female); *United States v. Greene*, 36 M.J. 274, 280 (U.S. Ct. Mil. App. 1993) (holding that "an explanation, which includes 'in part' a reason, criterion, or basis that patently

21

demonstrates an inherent discriminatory intent cannot reasonably be deemed race neutral" under *Batson*); *see also McCray v. State*, 738 So.2d 911, 914 (Ala. Crim. App. 1998) (stating that "even if the state were to come forward with race-neutral explanations for its strikes against the black potential jurors on McCray's venire, the peremptory strikes would not be upheld, because the state also acknowledged that race was a factor in its exercise of those peremptory strikes"); *Ross v. Commonwealth*, 455 S.W.3d 899, 905-09 (Ky. 2015) (finding it unnecessary to decide whether to adopt the mixed-motives approach or another approach, because the prosecution admitted it struck jurors because they were women); *Riley v. Commonwealth*, 21 Va. App. 330, 332-37, 464 S.E.2d 508, 509-11 (Ct. App. 1995) (holding that the prosecution violated *Batson* when it struck jurors because they were older and female); *State v. Jensen*, 76 P.3d 188, 193-94 (Utah Ct. App. 2003) (declining to adopt the dual-motivation test where the prosecution failed to give neutral reasons by saying that it struck two jurors because they were men).

An early expression of the per se approach appears in Justice Marshall's opinion dissenting from the denial of a petition for a writ of certiorari in *Wilkerson v. Texas*, 493 U.S. 924 (1989). In that case, Justice Marshall, joined by Justice Brennan, wrote that a strike based in part on a juror's race "cannot be squared with *Batson*'s unqualified requirement that the state offer 'a *neutral* explanation' for its peremptory challenge." *Id.* at 926 (Marshall, J., dissenting from denial of certiorari) (quoting *Batson v. Kentucky*, 476 U.S. at 98) (emphasis added in *Wilkerson v. Texas*). "To be 'neutral,'" Justice Marshall asserted, "the explanation must be based *wholly* on nonracial criteria." *Id.* (emphasis in original).

22

Justice Marshall worried that *Batson* was "ineffective against all but the most obvious examples of racial prejudice—the cases in which a proffered 'neutral explanation' plainly betrays an underlying impermissible purpose." *Id.* at 928. It would "be absurd," he wrote, to excuse racial prejudice "when it does surface, on the ground that a prosecutor can also articulate nonracial factors for his challenges[.]" *Id.* Justice Marshall would have found "that this Court's requirement that a prosecutor provide a 'neutral' explanation for challenging an Afro-American juror means just what it says— that the explanation must not be tainted by *any* impermissible factors." *Id.* (emphasis in original).[19]

In adopting the per se approach, some courts have echoed Justice Marshall: *Payton v. Kearse*, 329 S.C. at 60, 495 S.E.2d at 210 (stating that "[t]o excuse such obvious prejudice because the challenged party can also articulate nondiscriminatory reasons for the peremptory strike would erode what little protection *Batson* provides against discrimination in jury selection"); *accord* Russell D. Covey, *The Unbearable Lightness of Batson: Mixed Motives and Discrimination in Jury Selection*, 66 Md. L. Rev. 279, 311 (2007) (stating that "[a] mixed-motive explanation is not a neutral explanation under the applicable equal protection standards because the prosecutor has in effect admitted that an improper purpose was 'a motivating factor' in her decision to

---

[19] An opinion dissenting from the denial of certiorari has no precedential value. *See Teague v. Lane*, 489 U.S. 288, 296 (1989); *People v. Douglas*, 22 Cal. App. 5th at 1179 (Hull, J., dissenting) (citing *Singleton v. C.I.R.*, 439 U.S. 940, 944-45 (1978) (opinion of Stevens, J., respecting the denial of certiorari)). We do not cite Justice Marshall's dissenting opinion as precedent. We cite it for its historical significance.

strike a juror"). Others express concern about preserving the integrity of the judicial process and the need to bar any consideration of race, gender, or other inappropriate criteria in the selection of juries. *See*, *e.g.*, *People v. Douglas*, 22 Cal. App. 5th at 1174, 232 Cal. Rptr. 3d at 314. Some courts seem to say that, if the proponent of the strike offers both a neutral and an impermissible explanation, the court's analysis ends at step two of *Batson*: the proponent cannot be considered to have offered a neutral explanation. *See*, *e.g.*, *State v. King*, 215 Wis.2d at 308-09, 572 N.W.2d at 536. Other courts seem to proceed to step three, but assert that a neutral explanation is "transparently pretextual" when another stated explanation for the strike is race or gender. *See*, *e.g.*, *Robinson v. United States*, 890 A.2d at 680; *see also State v. Coleman*, 970 So.2d at 516 (stating that "the explicit interjection of race, without further explanation, renders implausible any explanation other than that the decision to strike this prospective juror was not race-neutral, but was based specifically on the juror's race, in violation of the fundamental precepts of *Batson* and its progeny").

**D. The Maryland Cases**

In dicta in *Khan v. State*, 213 Md. App. 554 (2013), this Court discussed the competing approaches to the problem that arises when a party simultaneously offers both permissible and impermissible reasons for a peremptory strike. In that case, the defense had exercised five of its seven strikes against White men. *Id.* at 563. The trial court upheld all of the strikes, except for the strike of a juror whom the defense attorney claimed to have struck because he was a conservatively dressed attorney for the federal government. *Id.* at 564. Although the trial court said that defense counsel was being

24

"candid," the court found his explanation to be a pretext for racial discrimination. *Id.* On appeal, Khan argued that "because the trial judge acknowledged that counsel was being 'candid,' the court's finding of pretext was clear error." *Id.* at 568.

This Court disagreed. *Id.* In an opinion by an experienced former trial judge, Judge Albert J. Matricciani Jr., we observed that the "argument is focused on the third step of the *Batson* analysis: whether the circuit court erred in finding that these race- and gender-neutral reasons for striking this juror were pretextual, and whether the circuit court therefore erred in finding purposeful discrimination in this strike." *Id.* at 569. Quoting a federal dual-motivation case, we wrote:

> The fact that the court believed defense counsel was partially motivated by certain characteristics he observed does not mean that the court was required to exclude the challenged juror. The trial court's determination is whether "intentional discrimination was a *substantial or motivating factor* in the decision to exercise the strike."

*Id.* at 570-71 (quoting *Jones v. Plaster*, 57 F.3d 417, 420-21 (4th Cir. 1995)) (emphasis added in *Khan v. State*).

Although we quoted a dual-motivation case, we went on to discuss the criticisms of that approach. In a lengthy footnote, we wrote that "the Supreme Court is aware of the 'mixed-motives' test," but that "it has not adopted a specific stance beyond the basic rule of law in *Batson*." *Id.* at 570 n.3 (citing *Snyder v. Louisiana*, 552 U.S. at 485-86). Citing the Ninth Circuit's decision in *Cook v. Lamarque*, 593 F.3d at 814-15, we added that "the 'substantial motivating factor' language from *Batson* remains the prevailing standard, and it does not require a specific causative analysis." *Khan v. State*, 213 Md. App. at 570 n.3. We "echo[ed]" the Ninth Circuit's "observation that the mixed-motives test presents

severe conceptual problems." *Id.* (citing *Cook v. Lamarque*, 593 F.3d at 814-15). We also echoed the Ninth Circuit's observation, that "[t]he Supreme Court itself" had "'alluded to the difficulty of determining on collateral review which of the prosecutor's motives were "but for" causes.'" *Id.* (quoting *Cook v. Lamarque*, 593 F.3d at 815).

We added:

> [W]e doubt that a trial court could actually make such a subtle causal distinction in any given trial. The mixed-motives test applies by definition when "*both* race-based and race-neutral reasons have *motivated* a challenged decision." If equal protection is violated only when the challenger's race-based reason was a but-for cause of the challenge, then the race-*neutral* reason for a challenge must have been an *insufficient* cause, standing alone (otherwise, the race-based reason could not be a causative factor). Thus, the entire mixed-motive analysis is premised upon the challenger's race-neutral reason being a *motivating* factor, but somehow not motivating *enough* to cause the strike when the race-based reason is "subtracted" from the decision to challenge.

*Id.* (quoting *Cook v. Lamarque*, 593 F.3d at 815) (emphasis added in *Khan v. State*).

"As a practical matter," we concluded, "we cannot imagine how a trial court could make such a determination, and as a constitutional matter, we believe it is fair to disallow a strike where racial bias plays *any* part in the decision to strike a juror." *Id.* (emphasis in original). Thus, we said, "we would not hold trial courts to the mixed-motives test[.]" *Id.* We recognized, however, that the issue (of which test to apply) was not properly before us, because no one had raised it. *Id.* Nor was there any "record from which we could potentially reconstruct a but-for causation analysis[.]" *Id.*

In summary, in dicta in *Khan*, this Court rejected the dual-motivation or mixed motives approach. *Id.* In addition, this Court expressed its belief, again in dicta, that it would be "fair to disallow a strike where racial bias plays *any* part in the decision to

26

strike a juror." *Id.* (emphasis in original).[20]

In *Ray-Simmons v. State*, 446 Md. 429 (2016), Maryland's highest court, now known as the Supreme Court of Maryland, tangentially addressed some of the issues in this case. In *Ray-Simmons*, defense counsel objected because the prosecution had used five peremptory strikes to strike Black men. *Id.* at 438-39. The prosecutor responded that she had intended to replace one of the men "with another black male." *Id.* at 439. The trial court allowed the strike. *Id.*

On appeal, the Court held that the strike violated *Batson* in part because, "on its face," it "was based on the juror's race and gender." *Id.* at 442; *id.* at 444; *id.* at 445; *id.* at 446. The Court agreed with Ray-Simmons that "the prosecutor's apparent intention to replace [the juror] with another African American man discloses that race and gender factored improperly into the prosecutor's decision, in violation of *Batson*." *Id.* at 445.

Although *Ray-Simmons* does not involve the simultaneous assertion of permissible and impermissible reasons for a strike, the Court found support for its conclusion in *State v. Coleman*, 970 So.2d 511 (La. 2007), a case that follows the per se approach. Quoting that case, the Court wrote that "'the explicit interjection of race, without further explanation, renders implausible any explanation other than that the decision to strike this prospective juror was not race-neutral.'" *Ray-Simmons v. State*, 446 Md. at 446 (quoting *State v. Coleman*, 970 So.2d at 516).

---

[20] Some courts seem to have interpreted *Khan* as an endorsement of the Ninth Circuit's substantial motivating factor analysis. *State v. Ornelas*, 56 Idaho at 737, 330 P.3d at 1095; *Ross v. Commonwealth*, 455 S.W.3d at 906 & n.4.

27

**E. This Case**

Turning back to this case, we must determine which of the competing approaches a court should employ when the proponent of a peremptory strike offers permissible and impermissible justifications at step two of *Batson*.

We begin by rejecting the dual-motivation or mixed-motives approach, for three principal reasons.

First, as Judge Matricciani observed, the dual-motivation or mixed-motives approach "presents severe conceptual problems." *Khan v. State*, 213 Md. App. at 570 n.3. Not least of those problems is the difficulty that a trial judge faces in performing a thought experiment, in the midst of jury selection, while attempting to ascertain whether the proponent of the strike would have struck the juror on the permissible ground alone. The judge's task, which occurs "in a virtual evidentiary vacuum,"[21] is quite different from what occurs, for example, in Title VII litigation, where the trier of fact can evaluate a defendant's motives based on "an often extensive record produced through document discovery and depositions[.]" Russell D. Covey, *The Unbearable Lightness of Batson*, *supra*, 66 Md. L. Rev. at 323. "[T]he inquiry turns from the historical to the hypothetical, and the court must undertake the speculative inquiry not of what happened, but of what would have happened had the prosecutor not harbored an invidious purpose." *Id.* at 329. "The difficult task of 'ferreting out discrimination' would be made nearly impossible by a 'but for' causation requirement, which would require a court to engage in counterfactual

---

[21] Russell D. Covey, *The Unbearable Lightness of Batson*, *supra*, 66 Md. L. Rev. at 322.

reasoning, often with only a sparse record to guide it." *Cook v. Lamarque*, 593 F.3d at 828 (Hawkins, J., concurring in part and dissenting in part). "Appellate courts reviewing mixed-motive challenges will lack even that minimal basis to review the trial court's ruling." Russell D. Covey, *The Unbearable Lightness of Batson*, *supra*, 66 Md. L. Rev. at 330.

Second, *Batson* itself recognized that "[t]he harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community." *Batson v. Kentucky*, 476 U.S. at 87; *see People v. Douglas*, 22 Cal. App. 5th at 1176, 232 Cal. Rptr. 3d at 316. "The Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of the State is most compelling in the judicial system." *Powers v. Ohio*, 499 U.S. at 415; *see* Russell D. Covey, *The Unbearable Lightness of Batson*, *supra*, 66 Md. L. Rev. at 316. "[T]he very integrity of the courts is jeopardized when a prosecutor's discrimination 'invites cynicism respecting the jury's neutrality,' . . . and undermines public confidence in adjudication." *Miller-El v. Dretke*, 545 U.S. 231, 238 (2005) (quoting *Powers v. Ohio*, 499 U.S. at 412) (citation omitted); *see People v. Douglas*, 22 Cal. App. 5th at 1176, 232 Cal. Rptr. 3d at 316. Equal justice under the law requires a criminal trial free of unlawful discrimination in the jury selection process. *See Flowers v. Mississippi*, 588 U.S. at ___, 139 S. Ct. at 2242. "Permitting blatant instances of discrimination to go undeterred . . . would be contrary to *Batson*'s purpose, eviscerate its protections in many cases, and erode public confidence in the neutrality of the criminal justice system." *Cook v. Lamarque*, 593 F.3d at 828 (Hawkins, J., concurring in part and dissenting in part). Yet, under the dual-

motivation or mixed-motives approach, a court may uphold a strike "despite clear evidence of racially discriminatory motivation." *Id.* at 814 (quoting *Kesser v. Cambra*, 465 F.3d at 472 (Wardlaw, J., concurring)). "[B]y tolerating actual discrimination in jury selection, mixed-motive analysis is inconsistent with the injunction that '[r]acial discrimination has no place in the courtroom.'" Russell D. Covey, *The Unbearable Lightness of Batson*, *supra*, 66 Md. L. Rev. at 318 (quoting *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 630 (1991)). Thus, to protect the integrity of our system of justice, and to protect the equal protection rights of the affected jurors, we reject the dual-motivation or mixed-motives approach.

Finally, the mixed-motives or dual-motivation approach has its origins in civil litigation, where a court must ensure that the judgment does not make the plaintiffs better off than they would have been but for the defendant's wrongful conduct—i.e., that the plaintiffs do not receive a windfall. *See* Sheri Lynn Johnson, *Flowers for the Arlington Heights Footnote*, *supra*, 57 Ind. L. Rev. at 33. Thus, for example, if a school district fires an employee because he exercises his First Amendment rights, but can show that it would have fired him anyway for entirely legitimate reasons, the United States Supreme Court has said that the employee cannot prevail. *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284-87 (1977). But whatever merit that policy may have in the setting of civil litigation for damages or reinstatement, it has none in the setting of *Batson*. In a *Batson* case, if we "overlook[] a wrongful motive simply because the proponent of a strike can convince the trier of fact that the same result would have ensued," we would "allocate[] the 'windfall' to the wrongdoer at the expense of the

defendant, the juror, and the criminal justice system in general." Russell D. Covey, *The Unbearable Lightness of Batson*, *supra*, 66 Md. L. Rev. at 335.

We turn to the per se approach and the Ninth Circuit's substantial motivating factor approach.

The substantial motivating factor approach represents a "modified version" of the per se approach. Russell D. Covey, *The Unbearable Lightness of Batson*, *supra*, 66 Md. L. Rev. at 330. It is "closely related" to the per se approach, but "asks slightly more of a defendant." *See* Sheri Lynn Johnson, *Flowers for the Arlington Heights Footnote*, *supra*, 57 Ind. L. Rev. at 28. Like the dual-motivation or mixed-motives approach, the substantial motivating factor approach requires a court to evaluate the reason for a strike, in the midst of jury selection, on a limited record—though the court need only determine whether an impermissible consideration was a substantial motivating factor for the strike, and not whether the impermissible consideration was the but-for cause of the strike. Otherwise, the difference between the per se approach and the substantial motivating factor approach is difficult to discern in cases like this, where the proponent of a strike has articulated both a permissible and an impermissible reason for the strike.[22]

When a court asks a party why it exercised a peremptory strike and the party answers the court's question by admitting that it exercised the strike, in part, for an impermissible reason, such as race, gender, or ethnicity, it is difficult to imagine how a

---

[22] By contrast, at step 3 of *Batson*, the substantial motivating factor approach can be expected to yield different results from an approach that asks whether a discriminatory reason disguised by a pretext was the but-for cause of a strike.

court could find anything other than that the impermissible consideration was a substantial motivating factor for the strike. The "act of identifying an improper motive itself is proof that the articulated reason was a 'cause' of the strike." Russell D. Covey, *The Unbearable Lightness of Batson*, *supra*, 66 Md. L. Rev. at 325. Thus, when the proponent of a strike has given both a permissible and an impermissible reason for the strike, the substantial motivating factor approach would seem to lead to the same result as the per se approach in all but the most unusual circumstances.

Ultimately, however, we are unpersuaded that the substantial motivating factor approach is the correct approach to adopt in a case like this, where the proponent of the strike had admitted that the strike was based, in part, on an impermissible consideration, such as race, gender, or ethnicity. Like the majority of courts that have considered the subject, we conclude that a peremptory strike is per se invalid in those circumstances. Furthermore, we agree with the courts that have recognized that, when the proponent of a strike admits that it exercised the strike in part for an impermissible reason, the proponent has not truly advanced a "neutral" reason for the strike; and thus that the analysis does not progress beyond step two of *Batson*. *See*, *e.g.*, *State v. King*, 215 Wis.2d at 308-09, 572 N.W.2d at 536. To be "neutral," within the meaning of *Batson*, a strike cannot be based on any impermissible criteria. *Wilkerson v. Texas*, 493 U.S. at 926 (Marshall, J., dissenting from the denial of certiorari).

Under the per se approach, the strike in this case was invalid because it was based, in part, on an impermissible consideration—gender. Consequently, we must remand the case for a new trial, because in the eyes of the Constitution, one discriminatory

peremptory strike "is one too many." *See Flowers v. Mississippi*, 588 U.S. at ___, 139 S. Ct. at 2241.[23]

## II.  Motion to Sever

In addition to his *Batson* argument, Hart argues that the trial court erred in denying his motion to sever and in refusing to conduct separate trials for each of the three thefts. We address this argument for the purpose of giving guidance on remand.

Maryland Rule 4-253(c) provides that a court "may" order separate trials for different criminal counts "[i]f it appears that any party will be prejudiced by the joinder[.]"  In considering whether to order separate trials under this rule, a court asks two questions.  The first is "whether evidence as to each of the accused's individual offenses would be 'mutually admissible' at separate trials concerning the offenses?" *Cortez v. State*, 220 Md. App. 688, 694 (2014) (quoting *Conyers v. State*, 345 Md. 525, 553 (1997)).  The second is "whether 'the interest in judicial economy outweighs any other arguments favoring severance?'"  *Id.* (quoting *Conyers v. State*, 345 Md. at 553). The first question involves a legal determination, which we review without deference to the trial court.  *See Conyers v. State*, 345 Md. at 553 (citing *Solomon v. State*, 101 Md. App. 331, 338 (1994)); *Cortez v. State*, 220 Md. App. at 694.  The second "requires a balancing of interests," which we will reverse only if "the trial judge's decision 'was a

---

[23] The State argues that the prosecutor was merely "collecting her thoughts" and that her statements do not demonstrate an intention to discriminate against men.  We are unpersuaded.  The record reflects that, when the prosecutor was reminded that the basis of the objection was gender and not race, she immediately asserted: "The gender here, there is—the State has a reason, diverse gender[.]"  *See supra* n.1.  Sometimes the most telling comments are made before a person has the opportunity to collect their thoughts.

clear abuse of discretion.'" *Cortez v. State*, 220 Md. App. at 694 (quoting *Conyers v. State*, 345 Md. at 556).

"The question of mutual admissibility is simply a method of assessing what difference there would be between a joint and a separate trial in any given case." *State v. Hines*, 450 Md. 352, 373 (2016). "Mutual admissibility" means that "evidence of each crime would be admissible in a trial for the other[.]" *Bussie v. State*, 115 Md. App. 324, 333 (1997). In those circumstances, the "defendant will not suffer any additional prejudice if the two charges are tried together." *McKnight v. State*, 280 Md. 604, 610 (1977).

To resolve whether evidence of an accused's individual offenses would be mutually admissible at separate trials concerning the offenses, a trial court conducts the same analysis that it would conduct in determining whether evidence of other crimes or wrongs would be admissible under Rule 5-404(b). *See Cortez v. State*, 220 Md. App. at 694 (citing *Conyers v. State*, 345 Md. at 553); *Garcia-Perlera v. State*, 197 Md. App. 534, 547 (2011). Under that rule, evidence of other crimes or wrongs "is not admissible to prove the character of a person in order to show action in the conformity therewith," but "may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, [or] absence of mistake or accident[.]" Md. Rule 5-404(b).[24]

---

[24] The recognized exceptions to the exclusionary rule are not exclusive, but contain a flexible list of representative examples that continues to expand. *See*, *e.g.*, *Oesby v State*, 142 Md. App. 144, 161-62 (2002).

Maryland courts have recognized two ways by which other crimes evidence may fall within the common plan or scheme exception to the general rule of exclusion in Rule 5-404(b). *See*, *e.g.*, *McKinney v. State*, 82 Md. App. 111, 124 (1990). The evidence can be either of "a *modus operandi*, which is but one means of establishing identity" or of "a plan to commit one offense as part of a grand scheme to commit others[.]" *Id*.

At trial, the State argued that the evidence of the three thefts fell within the exception for a common plan or scheme, because the thief used a similar modus operandi in all three: the victims were selling cars through online marketplace apps; the thief targeted high-end, European cars; the thief drove off with the cars after meeting the owners during test drives; and the thefts occurred within days or weeks of each other. The circuit court agreed.

Hart denied that he stole the cars and, thus, put the thief's identity at issue. Modus operandi evidence was therefore proper to establish Hart's criminal agency.

In establishing whether a group of activities qualifies as a modus operandi, a court may consider each characteristic of the method used as a whole, even if when considered separately as unrelated parts, the individual characteristics might appear unremarkable. *State v. Faulkner*, 314 Md. 630, 639 (1989). For example, the State established a modus operandi when a series of robberies occurred at Safeway grocery stores at about the same time on Friday nights, and the right-handed robber wore a distinctive mask and gloves, jumped on the checkout stand, and demanded large bills. *Id.* On the other hand, where the separate crimes bear only a "general resemblance" to each other, but are not "'so unusual and distinctive as to be like a signature,'" the evidence does not demonstrate a

35

modus operandi. *McKnight v. State*, 280 Md. at 613-14 (quoting Charles T. McCormick, *Evidence* § 190, at 449 (2d. ed. 1972)). Thus, where the evidence showed the commission of four separate robberies, which were committed in a highly populated area at different times of the day, with different means of force over the period of one month, and which involved different numbers of perpetrators, the evidence of each of the four robberies would not have been mutually admissible in a separate trial involving any one of the four. *Id.*

Hart relies on *Lebedun v. State*, 283 Md. 257 (1978), to support his argument that the three thefts in this case did not have enough in common to support a finding of a common scheme or plan. In that case, the defendant was charged with two robberies that occurred within three days of each other. The alleged similarities between the two were that the perpetrators in each incident: (1) were "two white males" of similar height and weight; (2) wore "red ski caps"; (3) took "money and drugs" that they put into a cloth bag; (4) and advised their victims "to be cool." *Id.* at 281.

In reversing the conviction and concluding that joinder was improper, the Court stated that there was "nothing particularly unusual or distinctive about red ski caps" or that the perpetrators were of similar height and weight. *Id.* The Court acknowledged that placing the money in a cloth bag and advising the victims to "be cool" came "much closer to a pattern of conduct[,]" but it concluded that these similarities could not justify joinder absent a closer proximity in time between the two robberies. It reasoned that the existing similarities "'fit into an obvious tactical pattern which would suggest itself to almost anyone'" inclined to commit a similar crime. *Id.* at 281-82 (quoting *McKnight v.*

36

*State*, 280 Md. at 614) (cleaned up).  To fit under the common scheme or plan exception, the Court wrote, there "'must be more than simply a manner of operation, which is possessed to some extent by most criminal recidivists.'"  *Id.* at 280 (quoting *Cross v. State*, 282 Md. 468, 475 (1978)).  "'A method of operation is not, by itself, a common scheme, but merely a repetitive pattern.'"  *Id.* (quoting *Cross v. State*, 282 Md. at 475).

Here, by contrast, there were several distinctive and unique similarities between the three incidents.  The thief, who identified himself as "Lorenzo," arranged to meet sellers by using online marketplace apps; the cars targeted were high-end, European cars; the thief asked to test drive the car; and the thief either took the car during the test drive or, after returning, drove away while the seller was distracted.  Although there may be many ways to steal cars through an online app, here the thief was interested only in particular types of cars.  He separated the victims from their cars in a unique way—by tricking them into believing that they could leave him in control of the vehicle.  He did not pull a weapon, or use force, or have an accomplice step in to assist him.  And all of the thefts occurred within a brief window of time.

In our judgment, the facts presented here are distinguishable from those of *Lebedun*.  The evidence showed much more than just a manner of operation employed to some extent by car thieves or a mere repetitive pattern.  The circuit court did not err in

concluding that the thefts were part of a common scheme or plan, or in denying Hart's motion to sever. [25]

We turn to the second question, which is "whether 'the interest in judicial economy outweighs any other arguments favoring severance?'" *Cortez v. State*, 220 Md. App. at 694 (quoting *Conyers v. State*, 345 Md. at 553) (internal brackets omitted). This question requires a balancing of interests by the trial court, including the "likely prejudice" to the defendant if the charges are tried together, against "considerations of judicial economy and efficiency, including the time and resources of both the court and the witnesses." *Id*.

The burden of showing prejudice is on the party alleging prejudice. *Holt v. State*, 129 Md. App. 194, 209 (1999). "'Prejudice'" means "'damage from inadmissible evidence, not damage from admissible evidence.'" *Solomon v. State*, 101 Md. App. 331, 349 (1994) (quoting *Osburn v. State*, 301 Md. 250, 254-55 (1984)). A defendant is not prejudiced and not entitled to severance where the charges are closely related to each other and arise out of incidents that occur within proximately the same time, location, and circumstances. *See Carter v. State*, 374 Md. 693, 705 (2003).

---

[25] Hart cites a consumer complaint survey report from 2017 and three news articles from 2017 and 2021 to suggest that use of the OfferUp app has become a common means of committing thefts, including car thefts. One of his examples involves a robbery, not the theft of a car. Two involve car thefts that were accomplished through the use of a bad check. The last involved an entirely different ruse to persuade the owner to consent to a test drive—the thief showed the owner a learner's permit and asked him to make a video of him driving the car, so that he could show the video to his father. In any event, the use of the OfferUp app was but one of a variety of characteristics that made the car thefts in this case unique.

After a court has determined that evidence of other crimes would have been mutually admissible in separate trials, "'any judicial economy that may be had will usually suffice to permit joinder unless other non-evidentiary factors weigh against joinder.'" *Cortez v. State*, 220 Md. App. at 694-95 (quoting *Conyers v. State*, 345 Md. at 556). As previously stated, we will reverse the trial court's balancing analysis only for a "clear abuse of discretion." *Cortez v. State*, 220 Md. App. at 694 (citing *Conyers v. State*, 345 Md. at 556).

Hart argues that even if evidence of the thefts would have been mutually admissible in separate trials, the trial court abused its discretion in refusing to sever the counts because, he says, "the risk of unfair prejudice far outweighed any interest in judicial economy." He argues that the cumulative evidence from each of the three theft cases unfairly bolstered the State's proof in each of the individual theft cases. Hart also argues that the cumulative evidence convinced the jury that the "thief committed not only two thefts, but that he committed each theft."

We reject Hart's contentions. As stated above, the question of identity was central to the theory of the defense, and the State proceeded on a modus operandi theory to establish its case. That the accumulation of evidence helped prove Hart's identity did not create unfair prejudice, although it was obviously prejudicial to Hart in that it helped establish his criminal agency. Moreover, the interest of judicial economy weighed heavily in this case. The State proffered that it would need to call and re-call the same witnesses to testify on the same issues in multiple trials if the court severed the counts. In addition, the State identified a backlog of cases that would be increased had the court

severed the counts.  Under the circumstances presented, the trial court did not abuse its

discretion in ruling that the interests of judicial economy outweighed the risk of unfair

prejudice when it denied the motion to sever.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE PAID ONE-HALF BY PRINCE GEORGE'S COUNTY AND ONE-HALF BY APPELLANT.**